THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL L. BONE, Defendant-Appellant.

Fourth District   Nos. 14944, 14945 cons.

Opinion filed April 10, 1979.

MILLS, J., concurring.
GREEN, J., concurring.
TRAPP, J., dissenting.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, and Greg Collins, law student, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Richard A. Current, Assistant State's Attorney, of counsel), for the People.

PER CURIAM: Defendant, Michael L. Bone, entered a plea of guilty to a charge of aggravated battery on July 26, 1976, and was sentenced to 2 years' probation. The State later unsuccessfully attempted to revoke Bone's probation by charging him with drug sales that occurred on both July 20, 1977, and August 2, 1977.

At the probation revocation hearing, the State presented evidence pertaining solely to the July 20 transaction. This evidence included the testimony of a drug agent who acknowledged that a report he prepared regarding the incident indicated that the individual from whom he purchased the drugs had a tattoo on his left shoulder. The agent admitted that when he examined defendant's left shoulder no tattoo was visible. After hearing the evidence, the trial court denied the State's petition, finding that the offense in question had not been proved. The trial court rested its decision on the fact that Bone did not have a tattoo on his left shoulder.

Subsequently, on February 28, 1978, defendant was convicted of the August 2 offenses of unlawful possession and unlawful delivery of a controlled substance. Prior to that trial, defense counsel had argued that the ruling made at Bone's probation revocation hearing concerning the July 20 transaction should bar the State from proceeding with the present prosecution because of the doctrine of collateral estoppel. Defense counsel argued that since Bone had been charged with both the July 20 and August 2 transactions, it made no difference that no evidence was presented concerning the August 2 transaction. The trial court, however, denied the defendant's motion to dismiss, noting that the evidence presented at the probation revocation hearing concerned a transaction other than one for which the defendant was now on trial.

Following the criminal conviction, a second petition to revoke defendant's probation on the aggravated battery charge was filed. This petition alleged that defendant had violated the terms of his probation because of the convictions for delivery and possession of a controlled substance stemming from the August 2 transaction.

Bone filed a motion to dismiss the revocation petition on double jeopardy grounds. The gist of the motion concerned the fact that a prior motion to revoke had charged Bone with the delivery and possession on August 2, 1977, and had been dismissed by the trial court. Accordingly, defendant contended that double jeopardy prevented the State from again attempting to revoke his probation with the August 2, 1977, criminal activity. The trial court, however, once again denied the motion to dismiss, finding that no evidence had been presented at the prior revocation hearing concerning the August 2, 1977, criminal activity and that the previous revocation petition had been denied solely because the State had not proved by a preponderance of the evidence that defendant had committed the July 20, 1977, crime.

The court then proceeded to the merits of the issue and took judicial notice of defendant's conviction for the August 2 drug transaction. Accordingly, the trial court found that Bone had violated the terms of his probation, revoked that probation, and sentenced him to a 2-year term of imprisonment with the provision that he receive no credit for time previously served on probation.

The probation revocation and the criminal conviction have been consolidated on appeal, and Bone raises numerous issues in regard to both proceedings.

The court holds that, under the circumstances of this case, the defendant could not be convicted of the August 2 drug transaction, and that defendant's probation on the aggravated battery charge was improperly revoked on the basis of such conviction. Accordingly, the judgment of the circuit court of Macon County entered on defendant's conviction for the August 2 drug transaction is reversed, and the order of the circuit court of Macon County revoking defendant's probation on the aggravated battery charge is also reversed.

Mr. JUSTICE MILLS, concurring:

If the State alleges in a petition to revoke probation that a defendant committed a particular crime, *inter alia*, and the petition is denied by the trial court after a hearing on the merits but where no evidence is presented on this specific offense set forth, can that defendant be subsequently prosecuted for that particular substantive offense itself?

No—double jeopardy.

Illinois decisions have recognized that, although the differences between a criminal trial and a probation revocation hearing are substantial, the doctrine of collateral estoppel does not allow the State to relitigate issues in one proceeding—be it trial or probation revocation hearing—that have been decided against it in the other proceeding. *People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43, *cert. denied* (1975), 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001; *People v. Kondo* (1977), 51 Ill. App. 3d 874, 366 N.E.2d 990.

In *Grayson*, the supreme court held that a trial judge's finding of not guilty in a bench trial on an armed robbery charge precluded the State, under the doctrine of collateral estoppel, from relitigating the question of such robbery in subsequent proceedings to revoke defendant's probation. In *Kondo*, our brothers in the Fifth District found that the denial of a petition to revoke defendant's probation upon a specific finding that defendant had carried the weapon in a broken down, nonfunctioning state, was a final determination of the charge. Therefore, the appellate court held that the State was barred under the doctrine of collateral estoppel from seeking relitigation, upon the same evidence, in a prosecution for carrying a concealed weapon. The court decided that the State—having elected to first prosecute defendant by way of a probation revocation hearing and having failed to meet the less stringent burden of proof required in that proceeding—was subsequently barred from attempting to relitigate the identical issue upon the same evidence under the more demanding standards of a criminal trial.

In the instant case, as opposed to the situations in *Kondo* and *Grayson*, the circumstances of the August 2, 1977, transaction were not litigated by the trial court at the first probation revocation hearing. Therefore, the State argues that the situation here is clearly distinguishable from *Grayson* and *Kondo* and that the doctrine of collateral estoppel does not apply.

Collateral estoppel applies when an issue of *ultimate fact* has once been determined by a valid and final judgment. That issue cannot again be litigated between the same parties in any future lawsuit. (*Grayson*.) Collateral estoppel is limited to situations in which an examination of the entire record in the prior case shows that a rational trier of fact could only have rendered its verdict upon a resolution of the issue that is in controversy in the immediate cause. (*Ashe v. Swenson* (1970), 397 U.S. 436, 444, 25 L. Ed. 2d 469, 475-76, 90 S. Ct. 1189, 1194; *People v. Kennedy* (1978), 60 Ill. App. 3d 947, 377 N.E.2d 830.) Here, the August 2 transaction was not even considered by the trial court at the first probation revocation hearing and therefore the doctrine of collateral estoppel simply does not apply.

However, the doctrine of collateral estoppel is merely one element of

the fifth amendment's guarantee against double jeopardy. (See *Ashe.*) The double jeopardy clause states:

"*  *  * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb *  *  *." U.S. Const., amend. V.

The fifth amendment applies to the States through the due process clause of the fourteenth amendment (*Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056), and Illinois has codified double jeopardy principles in section 3—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—4).

The State, however, argues that the principle of double jeopardy is inapplicable in this case. I cannot agree. In an analogous situation, we have recently held that the constitutional and statutory concepts of double jeopardy should be applied to MINS cases (minor in need of supervision). (*In re R.L.K.* (1978), 67 Ill. App. 3d 451, 384 N.E.2d 531.) In *R.L.K.*, the State had brought unsuccessful petitions seeking to declare respondents minors in need of supervision. Subsequently, the State attempted to bring petitions alleging that the minors should be adjudged delinquents. We held that the delinquency petitions were barred by the constitutional and statutory principles of double jeopardy. In so doing, we discounted the State's argument that a MINS petition is a civil—rather than a criminal—proceeding. Instead, we felt that the better analysis involved an examination of the characteristics of the proceeding, including the stigma and deprivation of liberty associated with the action. See also *Breed v. Jones* (1975), 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779; *In re Vitale* (1978), 71 Ill. 2d 229, 375 N.E.2d 87 (appeal pending).

Similarly, an analysis of a probation revocation proceeding convinces us that the consequences of such a proceeding parallel those involved in a criminal case. If probation is revoked, a defendant can be incarcerated. (See Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—4.) The fact that different standards of proof are involved in criminal trials and probation revocation proceedings is of no consequence. (See *Grayson*; *Kondo*; but see *People v. Rose* (1978), 58 Ill. App. 3d 397, 374 N.E.2d 736.) Consequently, I conclude that principles of double jeopardy are applicable to petitions to revoke probation.

*Ergo*, since the State decided to include both the July 20 and August 2 transactions in the initial petition to revoke defendant's probation, jeopardy attached, and the State was prohibited from bringing those allegations in a subsequent criminal prosecution or a subsequent petition to revoke probation.

Because of the severe consequences involved in a probation revocation proceeding, charges should not be brought unless the prosecution has determined that there is sufficient evidence to support those charges and that such evidence can be marshaled and presented at

the probation revocation hearing. There must be some sanctity in pleadings upon which reliance can be grounded—particularly in proceedings of a criminal nature where liberty may be at stake. Since a defendant must be prepared to defend against the allegations of criminal conduct made in a petition to revoke his probation, it is only fair that the State either present evidence on those charges at the revocation hearing, withdraw the charges, or face dismissal of those charges.

Accordingly, I believe that both the defendant's conviction on the August 2 drug transaction and the trial court's decision to revoke his probation on the aggravated battery charge must be reversed.

Mr. JUSTICE GREEN, concurring:

I agree to reverse both judgments appealed but would do so upon the theory of collateral estoppel. I do not consider the probation revocation proceedings to have placed defendant in jeopardy.

I do not agree that the failure of the State to present evidence as to the alleged August 2, 1977, sale prevented that issue from being litigated at the first revocation hearing. The petition to revoke alleged that defendant had committed both sales, and neither allegation was ever withdrawn. A party cannot present issues for a court's determination "and then avoid the effect of an estoppel by withholding proof thereof." (50 C.J.S. *Judgments* §729, at 218 (1947).) The trier of fact here found that defendant did not make the July 20, 1977, sale. As no evidence was presented concerning the August 2 sale, the trier of fact would reasonably have had to conclude that the defendant did not make that sale either.

The *Ashe* court described the collateral estoppel doctrine in criminal cases as one that should be applied realistically, rationally, and without the very technical interpretation of the past. It ruled that in a criminal case, when a general verdict of acquittal could not have been made by a rational jury without making a certain factual finding, the State is estopped in subsequent proceedings to dispute that finding. The same rule would obviously apply to factual determinations reasonably required to have been made in bench trials. Here, theoretically and under the technical theories rejected by *Ashe*, the court could have concluded that the defendant committed the August 2 sale but nevertheless refused to revoke the probation. As I have stated, however, such a determination could not reasonably have been made when no evidence was presented upon the subject. By analogy to the application of collateral estoppel in *Ashe*, the State is also estopped here to later claim that defendant made that sale.

The distinction between mere application of the doctrine of collateral estoppel and application of the full doctrine of double jeopardy is important. The collateral estoppel doctrine prevents the State from relitigating a factual issue upon which it has received an adverse

determination. Double jeopardy principles prevent relitigation of an issue even in the event of an original determination favorable to the State. In *People v. Kondo* (1977), 51 Ill. App. 3d 874, 876, 366 N.E.2d 990, 991, the court said, "[T]he State may both seek to revoke a defendant's probation and seek a criminal conviction based on the same conduct." However, if a proceeding to revoke probation places the defendant in jeopardy as to the conduct for which revocation is sought, the State could not later charge him in a criminal proceeding with the conduct for which revocation was sought even if that conduct was proved at the revocation hearing. A serious question would also be presented as to whether a defendant's probation could be revoked because of the conviction of a crime while on probation. The proceedings in which he was convicted would have placed him in jeopardy, and the revocation proceedings based upon the conviction could arguably be held to place him in jeopardy a second time.

Had the supreme court considered a probation revocation proceeding to place a defendant in jeopardy, it would have decided *Grayson* on the theory of double jeopardy and would not have relied on the then recent doctrine of collateral estoppel as defined by *Ashe.*

Mr. JUSTICE TRAPP, dissenting:

I would affirm the judgments of the trial court for the reason that the authorities do not support either the theory of double jeopardy or of collateral estoppel.

Mr. Justice Mills would bar, upon double jeopardy grounds, both a prosecution for the sale made on August 2, and the subsequent revocation of probation imposed for aggravated battery by reason of the conviction for that sale.

The rationale appears to be that the prosecution alleged drug sales on two dates in the petition to revoke probation upon the conviction for aggravated battery, but failed to present evidence or further proceed with regard to the second sale (August 2) at the probation revocation hearing held. It is said that a doctrine designated "sanctity in pleadings" requires that the prosecution thereafter be barred from any further action.

This is not double jeopardy under the authorities. The separate drug sales were not the same act of the same offense requiring compulsory joinder under section 3—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—3). Nor are they within the statutory provisions for double jeopardy provided in section 3—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—4).

In *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766, *appeal denied,* it is said that the rule of double jeopardy does not apply to the

revocation of probation by reason of the offense for which defendant was also convicted. The revocation hearing concerns violation of the provisions of probation separate from the trial of the subsequent substantive offense. The respective proceedings are separate and distinct, and the several punishments encompass different factors. In *People v. Kondo* (1977), 51 Ill. App. 3d 874, 876, 366 N.E.2d 990, 991, the court quoted *People v. Howell* (1977), 46 Ill. App. 3d 300, 302, 360 N.E.2d 1212, 1213:

> " 'A sentence imposed upon revocation of probation is not considered punishment for the offense which led to the revocation proceedings, but for the original crime. Thus there is no question of double jeopardy, or of being punished twice for the same offense'." (51 Ill. App. 3d 874, 876, 366 N.E.2d 990, 991.)

*Kondo*, in fact, made such statement under circumstances where the trial court had refused to revoke probation for the failure to prove an element of the revoking offense.

In *People v. Golz* (1977), 53 Ill. App. 3d 654, 368 N.E.2d 1069, *cert. denied* (1978), 437 U.S. 905, 57 L. Ed. 2d 1134, 98 S. Ct. 3091, the court pointed out the broad discretion of the State's Attorney in determining how to prosecute. The court stated:

> "It is clear that each probationer alleged to have committed a further criminal offense could be prosecuted in one of several ways. Each of them could be tried first on the petition to revoke probation, then on the substantive criminal offense, or first on the substantive criminal offense and then on the petition to revoke probation. Each could also be tried on only the petition to revoke probation or on only the substantive criminal offense. In addition, the State's Attorney may in the exercise of his discretion choose not to prosecute at all. Each probationer accused of a subsequent criminal offense, therefore, is at the discretion of the State ultimately placed in one of these five classifications; that fact alone does not raise an equal protection issue." (53 Ill. App. 3d 654, 658, 368 N.E.2d 1069, 1072.)

Mr. Justice Mills suggests that the State's Attorney could "withdraw the charges" at the probation revocation if he did not wish to proceed. This, in fact, is what was done when the prosecution rested without introducing evidence of the second sale alleged in the petition to revoke.

In a second aspect, the record does not support the application of collateral estoppel as stated by Mr. Justice Green. In the context of the sale on August 2, the issue is whether the trial court at the first probation revocation determined "an issue of ultimate fact" which cannot thereafter be litigated in the prosecution of defendant. In *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, and *People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43, it was concluded that jury verdicts of acquittal

necessarily determined and established the fact that defendant was not one of the robbers. In *People v. Kondo* (1977), 51 Ill. App. 3d 874, 366 N.E.2d 990, a hearing upon revocation of probation established that defendant was not carrying a weapon as defined by statute and it was held that prosecution upon the substantive charge was barred.

As shown in the facts stated here, no evidence was heard upon the substantive charge of a drug sale on August 2. I cannot equate the dismissal of the initial petition to revoke probation under the circumstance that no evidence was introduced with the acquittals in *Ashe* and *Grayson*. As stated in *People v. Warne* (1976), 39 Ill. App. 3d 894, 896, 350 N.E.2d 836, 838, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 559, 97 S. Ct. 1139, the doctrine of collateral estoppel is a narrow one. It requires the judicial determination of a single ultimate fact negating guilt. This record does not disclose such a determination.