THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS WARD, Defendant-Appellant.

Third District   No. 79-149

Opinion filed January 17, 1980.

STOUDER, P. J., dissenting.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Dennis Ward appeals from a conviction and sentence for theft and, also, from a revocation of probation.

On September 13, 1978, the defendant, 18-year-old Dennis Ward, was convicted by a jury of the theft of a motorcycle valued at over $150. A sentencing hearing was held on December 18, 1978, and sentence was entered on December 20. The appellant was sentenced to four years imprisonment plus one-year mandatory supervised release, with credit given for the 153 days he had spent in custody prior to sentencing. At the time of the commission of the theft, the appellant had been on probation for eight months. He had been sentenced on September 12, 1977, to three years probation for burglary. On December 18, 1978, at the judge's recommendation, a petition to revoke probation was filed. The following day, the appellant pleaded guilty to having violated his probation, in that he had been convicted of another crime. He was thereupon sentenced to three years' imprisonment, plus two years' mandatory supervised release,

to be served concurrently with his term for theft, with credit to be allowed for the 153 days he spent in custody and also for the 423 days he had already been on probation. In this consolidated appeal, Dennis Ward appeals his conviction for theft, his sentence for that crime, and the revocation of his probation. The appellant's first contention is that he had not been proven guilty beyond a reasonable doubt.

The record shows that on May 19, 1978, John DeMik and his 14-year-old son, Barry, noticed that Barry's burnt orange 1971 motorcycle was missing from their garage. Pembroke police chief Clint Butler testified that he had seen the appellant, during the week of May 20, riding the motorcycle in question. It was then painted blue. Every time Chief Butler was observed by the appellant, Ward would ride off into the fields. Dennis Ward explained this conduct was the result of his having neither a driver's license nor a vehicle license plate. On May 28, Chief Butler stopped the appellant while the latter was stalled in traffic during the annual rodeo. The motorcycle at that time was painted black. Chief Butler testified that the appellant told him the title to the bike was with his father at home. Another witness, a security guard at a local day-care center, testified that he had seen the appellant riding the motorcycle in question during the week of May 20. At that time it was painted orange.

On May 29, the appellant left the motorcycle with Dennis Wilson, a friend of his, because it was "broken." The motorcycle was seized by the police at Wilson's house and was identified by the DeMiks as their missing bike. Beneath the black paint was a layer of blue paint, and below that, the original orange paint.

The next day, when informed that the police had seized the motorcycle, the appellant Ward called them on the telephone to inquire about it and was told that the bike had been stolen. The defendant then informed the police that he had purchased the bike from a Tyrone Green and that Green had the title. The appellant testified that he then went to see Green, that Green denied that the motorcycle was stolen, and that he presented the appellant with a certificate of title. Green was never subsequently located, although the appellant and his father both claimed to have looked for him.

The appellant testified that he had never told Chief Butler that his father had the title, but had consistently claimed that Green had the title. He testified that he met Tyrone Green on April 29, 1978. He further testified that he agreed to fix Green's car in exchange for a motorcycle. The next day, he went to Green's house and test rode the orange motorcycle in question. He next saw the motorcycle the following weekend, by which time it had been painted blue. Green let him ride the motorcycle the entire next week.

The indictment of the appellant charged theft, in that he "did

knowingly exert unauthorized control over property of John D. DeMik * * * intending to deprive [him] permanently of the possession, use and benefit" of the motorcycle. The elements of the crime of theft are set out in section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1). Both possession and knowledge that the property was stolen are essential elements.

■■ The appellant claims that it was not proven beyond a reasonable doubt that he knew that the motorcycle was stolen. The jury was instructed that "[i]f you find that the Defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the Defendant obtained possession of the property by theft." This instruction was proper. (*People v. Franceschini* (1960), 20 Ill. 2d 126, 169 N.E.2d 244; *People v. Bennett* (1954), 3 Ill. 2d 357, 121 N.E.2d 595.) The appellant contends that, despite this presumption, the State failed to prove beyond a reasonable doubt that he knew the motorcycle was stolen property, basing this contention on "defendant's reasonable and uncontradicted explanation of his possession of the motorcycle, which negated whatever inference of guilt may have arisen from the presumption."

The record shows that the appellant's story was contradicted. Chief Butler testified that the appellant told the chief that his father had the title at home. The appellant denies having made this statement. He maintains that he has consistently claimed to have obtained the motorcycle in exchange for work done for Green. The appellant stated that he first saw and rode the motorcycle on April 29, 1978, and that it was painted blue the following weekend. Yet the motorcycle was last seen by Mr. DeMik on May 19, 1978. We find nothing unreasonable in the jury concluding that Mr. DeMik was telling the truth and that Dennis Ward was not.

■■ While the appellant's story was not preposterous on its face, we can find no error in a jury's determination that it was not reasonably believable. The defendant never produced the Tyrone Green that Ward asserted sold Ward the motorcycle in exchange for repair work on Green's car. No one other than defendant testified that he had ever met Mr. Green. The appellant's father searched for him without success. The police also searched for him without success. Appellant claimed to have purchased the motorcycle from Green and claimed to have found Green and received a title from him after the motorcycle was seized by the police. The title produced was an Indiana title. It was not in the name of Tyrone Green, but rather in the name of Paul Roof, never further identified. No transfer was indicated on the back side of it showing any involvement with it by one Tyrone Green. The front side of it showed erasures and re-inking. All of the data linking this title to the motorcycle was inked in and altered. The only typewritten, unaltered, information on

it was the name of Paul T. Roof, his address, and a title number. The only claim of substantiation that the defendant presents for his story is that he did not run away from Chief Butler at the rodeo. The appellant claimed that he no longer feared the Chief because the motorcycle bore, by then, a "license applied for" sticker. The jury could well have found that, for some reason other than his innocence, the appellant was not compelled to run away from the Chief while riding on the repainted motorcycle. Perhaps it found that, because the motorcycle was stalled in traffic, the appellant had been precluded from making his usual escape upon being approached by the Chief. The jury chose not to believe Dennis Ward's story.

There are numerous cases factually similar to the instant case, in which a jury chooses to disbelieve the explanation offered by the defendant for his possession of recently stolen property. See, *e.g., People v. Allen* (1977), 48 Ill. App. 3d 870, 363 N.E.2d 616; *People v. McIntosh* (1977), 48 Ill. App. 3d 694, 363 N.E.2d 128; *People v. Helm* (1973), 10 Ill. App. 3d 643, 295 N.E.2d 78; *People v. Kilgore* (1975), 33 Ill. App. 3d 557, 338 N.E.2d 124.

The appellant argues that punishing him for his theft conviction and revoking his probation on the basis of that conviction constitutes double jeopardy. The appellant acknowledges that the settled law in this State is that jeopardy does not attach at a revocation hearing. (*People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766; *People v. Howell* (1977), 46 Ill. App. 3d 300, 360 N.E.2d 1212; *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 836.) Instead, he argues that the law should be changed. Defendant-appellant's argument is based upon the case of *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887, in which the Illinois Supreme Court found double jeopardy when the "same evidence" was used to convict a man of attempted murder as had been used in holding him in contempt of court for violating a protective order in a divorce proceeding by striking and shooting his wife. He was sentenced to six months in the county jail for contempt of court, and his conviction for attempted murder was reversed on the grounds of double jeopardy.

■■ "[T]he State is not seeking to retry defendant for the same offense. His sentence of probation was revoked because it was conditioned on his not again engaging in criminal conduct within the probationary period. Upon proof that he did commit [another crime], he was subject to be sentenced for the original crime. The revocation of probation was not punishment for the subsequent criminal conduct which caused the revocation. (See *People v. Morgan,* 55 Ill. App. 2d 157, 159-61 (1965).) The State does not now seek to try defendant again for the same offense * * *." (*People v. Warne* (1976), 39 Ill. App. 3d 894, 898, 350 N.E.2d 836.)

"A sentence imposed upon revocation of probation is not considered punishment for the offense which led to the revocation proceedings, but for the original crime. Thus there is no question of double jeopardy, or of being punished twice for the same offense." (*People v. Howell* (1977), 46 Ill. App. 3d 300, 302, 360 N.E.2d 1212, 1213.) The imposition of the sentence of probation is conditional. Here the defendant violated one of the conditions of his probation. He committed another crime. Since he knowingly violated a condition of his probation, he cannot now claim that he is being twice punished for the crime of theft. He is not being punished a second time for the crime of theft. He is being resentenced for the crime of burglary, having knowingly violated the conditions of his previous sentence for the latter crime.

We do not find this reasoning contradictory to *Gray*. In *Gray*, the defendant had twice been punished for the same act, striking and shooting his wife. The fact that such act constituted both a violation of the judge's protective order and of the statutory criminal law of this State did not preclude the disallowance of his being punished more than once for this act by the State. Here we have a different matter. The appellant is not being punished twice for a single violation of the criminal law of this State. He is being punished once for the crime of theft. He is, in addition, being punished for the crime of burglary. That his conditional sentence for the crime of burglary is now being modified because he has violated a condition of that sentence does not change this basic fact.

Until such time as our supreme court rules on the applicability of double jeopardy in the probation revocation proceeding, we should follow the clear precedent of the appellate cases which have specifically addressed this issue, as we find their reasoning persuasive.

The appellant's final contention is that the judge impermissibly considered the appellant's violation of his probation in sentencing him for his theft conviction. At the sentencing hearing of December 18, the trial judge made the following statement to the defendant:

"Your sentence is a sentence which is for you and you alone. It is to act as a deterrent to any criminal behavior which you may contemplate in the near future. The Penitentiary sentence the Court will impose is to indicate to you that when I put you on probation not too many months ago that I was serious. Probation is in lieu of a Penitentiary sentence. It is a serious thing. The terms and conditions of probation mean something to the Court—and it should to you—and one of the terms of your probation was you weren't to violate the laws of this State and this Nation or any Municipality in which you happened to be. The Jury of this County has decided that you violated the laws of this State when

you committed the offense of Theft by its decision. That theft was in excess of $150.00 and that is a felony.

I am cognizant of the fact that you are only eighteen years of age. I am also cognizant of the fact that if I impose the minimum of two (2) years, with the credit for time served and the good time you would earn in the Penitentiary, you would be back on the streets in a very short period of time.

The State has recommended a term of five (5) years in the Penitentiary.

The Court is going to sentence you to a term of four (4) years flat time in the Penitentiary, which means with your good time you will be out in two years (2 years). With the credit for time served you could be out I would think without any problem in a reasonable time."

■■■ The appellant cites us to cases which stand for the proposition that at a probation revocation hearing the defendant can only be sentenced for the crime for which he had originally been sentenced to probation. It is improper for a judge to punish an offender on resentencing for a probation violation for the crime that resulted in the revocation of that probation. (*People v. Newton* (1974), 18 Ill. App. 3d 180, 309 N.E.2d 779; *cf. People v. McCall* (1972), 7 Ill. App. 3d 135, 287 N.E.2d 45.) We think, as appellant must have intended to show, that the converse is also true. An offender is to be sentenced for the crime of which he has been convicted, and not for past crimes. The legislature, however, has clearly directed a sentencing judge to consider past crimes as factors in aggravation when determining a sentence for a contemporary conviction. (See Ill. Rev. Stat., 1978, Supp., ch. 38, par. 1005—5—3.2(a)(3).) The appellant cannot be sentenced in case No. 78-CF-141 for a violation of his probation in case No. 77-CF-131. However, the sentencing judge may, indeed must, consider a convicted criminal's potential for rehabilitation in determining the proper sentence. (Ill. Rev. Stat. 1977, ch. 38, par. 1—2(c); *People v. Ford* (1972), 4 Ill. App. 3d 291, 280 N.E.2d 728.) Here the judge has clearly indicated that it is his belief that only a penitentiary sentence will deter this offender from committing more crimes. Previously, defendant had been sentenced to a period of three years probation for burglary. Within eight months he was involved in another crime. Obviously, the judge found the rehabilitative potential of this defendant weak. It was, therefore, proper for the judge, in determining sentence, to consider the probation violation in relation to the defendant's potential for rehabilitation. The judge's statement to the appellant (that he considered a sentence of probation a serious matter) may have been more appropriate at the appellant's probation revocation hearing than at his

sentencing hearing. Clearly this defendant needed that lecture. We cannot find that the giving of the lecture at the theft sentencing hearing of December 18 rather than at the probation revocation hearing of December 19 indicated improper consideration on the part of the judge such as to prejudice the appellant. The judge sentenced the appellant to four years imprisonment, noting that with good time and time already served, he would face some 578 days in the penitentiary. The State, although not recommending an extended sentence, did recommend the maximum normal sentence of five years. The judge chose not to be so harsh. We cannot find any prejudice to the defendant resulting from the trial judge's consideration of the factors of aggravation, mitigation, and rehabilitation potential as shown in this case.

For the reasons stated, the judgments and sentences of the Circuit Court of Kankakee County in the consolidated appeals are affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I respectfully dissent from the views of my colleagues. I believe the judgment revoking the defendant's probation and sentencing him on the original offense should be reversed and that the defendant's other conviction for theft should be reversed and remanded for new trial.

This case presents a somewhat related problem to that decided by this court in *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766, in which I dissented, believing that the principles of estoppel and double jeopardy precluded a criminal conviction based on the same facts resulting in a probation revocation and sentence. I will not restate my views in this opinion, but I would note that *People v. Bone* (1979), 70 Ill. App. 3d 972, 389 N.E.2d 575, illustrates an interesting application of the rules announced in *People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43, *cert. denied* (1975), 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001, and *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887, which tend to offer some further support for my belief in that a single act violative of a criminal statute may not be the basis both for an independent criminal action and a probation revocation proceeding. Either an acquittal or conviction in one proceeding bars another prosecution. In *People v. Vahle*, referred to above, the defendant's probation was revoked and sentence imposed in the original offense prior to the defendant's conviction of the offense in an independent criminal action. In *Vahle*, evidence was introduced in each

proceeding concerning the same act requiring, in my judgment, the interposition of the bar of double jeopardy. The procedure invoked in the instant case demonstrates even more conclusively that the same act or conduct is the basis for each action. Having been convicted of the theft in the instant case, the conviction irrefutably established the defendant's violation of his probation, and in fact the court was able to take cognizance of the violation of the criminal statute by taking judicial notice of the defendant's conviction for theft. Once having been found of theft in an independent criminal action, defendant's violation of his probation was conclusively established. Defendant's conduct in exercising unlawful possession of stolen property was the cause and the only cause of his criminal conviction and probation revocation. But for this conduct neither jail sentence would have been imposed. To say that the single act did not precipitate both sentences is to exalt form over substance.

The difficulty of supporting the dual punishment aspect of double jeopardy is illustrated by the majority's comment that the trial court's "lecture" would have been more properly given as a part of the sentencing hearing after defendant's probation had been revoked. Since each sentence is grounded on a single violation of the Criminal Code, refining language does not create a difference when no distinction exists.

This brings me to the issue related to the instruction given to the jury based on the unexplained possession of the recently stolen property. My views on this subject were also expressed in my dissent in *People v. King* (1979), 78 Ill. App. 3d 879, and no useful purpose would be served in reiterating those views in this dissent. Where an issue of nonexplanation or explanation arises as it does in this case, it is my belief that the presumption should disappear and the issues of guilt or innocence should be resolved by the jury giving due weight to the inference which may be drawn from the evidence presented without the additional force of a presumption. Alternatively, I think an instruction should be given if the presumption is to be used indicating that where the crime is based solely on the presumption, the underlying fact should be proved beyond a reasonable doubt. As is disclosed by the majority opinion, whether the defendant's possession of the motorcycle was explained or unexplained was the sole issue in the case, since the defendant was not charged with stealing the motorcycle and his possession of the property under the circumstances was the only evidence of the guilty knowledge required.

Even though the conclusion to be drawn from the presumption may be characterized as permissive, there are no standards contained in the instructions indicating to the jury on what basis their discretionary authority should be exercised. Merely characterizing the instruction as permissive does not avoid the problem that each juror or the jury as a

whole may apply the presumption instruction in any manner which they or it feels appropriate.

Even in civil cases we do not permit a jury this license. Wherever there has been an allegation of the violation of a statutory duty as the basis for negligence, we direct not only that the violation of the statute or the act of negligence is one of the issues required to be proved by the plaintiff, but also in a separate instruction indicate that such violation must be considered with all of the other evidence before liability can be established.

In summary, I believe the principles of estoppel and double jeopardy require the defendant's sentence in the offense of burglary be reversed and that the defendant is entitled to a new trial on the charge of theft.