THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALAN LANCE, Defendant-Appellant.

Third District   No. 79-980

Opinion filed August 28, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the defendant, Alan Lance, following the revocation of his probation. The probation was originally imposed after the defendant pleaded guilty to the unlawful delivery of a substance represented to be a controlled substance. Following revocation, the defendant was sentenced to the maximum · indeterminate term of imprisonment of not less than 3 1/3 years nor more than 10 years.

The factual basis for the guilty plea was that on March 28, 1977, the defendant and his co-defendant wife, Cindy Lance, met with Agent William Trowbridge of the Multi-County Drug Enforcement Group in a Kroger parking lot in East Peoria, Illinois. This meeting had been previously arranged for the purpose of buying 1,000 hits of "speed," or amphetamines. At this meeting, the defendant gave Agent Trowbridge a clear plastic bag containing numerous pills in exchange for $120. A chemical analysis of the substance given to Agent Trowbridge by the defendant revealed that the substance was caffeine.

On July 13, 1979, the State filed a petition to revoke the defendant's probation alleging that the defendant had violated his probation by driving while his driver's license was revoked. On August 16, 1979, the defendant appeared and admitted the allegations of the petition. The trial court informed the defendant of the nature of the charge, the consequences of entering his plea of guilty, and the possible sentences upon revocation. The State's Attorney then represented to the court that the factual basis for the revocation petition was that on July 6, 1979, the defendant pleaded guilty to driving while his license was revoked in another case. The trial court accepted the admission to the revocation petition and ordered a presentence investigation.

The presentence report indicated that the defendant was 21 years old, and that, while the defendant's probation officer felt that defendant's reporting record was fairly good, his opinion was that defendant's overall performance on probation was not good. The report indicated that at age 12 the defendant had been declared a minor in need of supervision and had been removed from his home. He had also been declared a delinquent for committing several burglaries and auto theft. The report

noted that the defendant had a poor childhood, with little supervision in the home and indications of possible child abuse. Both of the defendant's parents had a history of heavy alcohol use, and the defendant had an alcohol problem himself, as noted by the probation officer. Alcohol had apparently taken control of the defendant's life, cost defendant his friends and created numerous family problems.

The defendant's adult criminal record prior to being placed on probation consisted of five traffic offenses, misdemeanor theft, and resisting a peace officer. The resisting charge grew out of a family dispute during which the defendant was intoxicated.

Subsequent to being placed on probation in the case at bar, the defendant was convicted of retail theft, two counts of driving while his license was revoked, leaving the scene of an accident, and battery. The battery charge also arose out of a family dispute.

The report additionally revealed that the defendant had been honorably discharged from the army in 1975, and had been steadily employed at Local 649 in Peoria from 1975 until his incarceration in this case in 1979.

On September 20, 1979, a sentencing hearing was held. No evidence was offered in aggravation or mitigation. Defense counsel argued that the defendant should receive the minimum sentence of imprisonment. In support, counsel noted that the presentence report revealed defendant's bad home life and problems as a juvenile. Counsel also noted that while defendant has a great number of prior offenses, when defendant's record is analyzed, it can be observed that many of these offenses are traffic offenses; that defendant's resisting and battery convictions arose out of family disputes and were related to defendant's alcohol problems; that since 1973, most of the violations committed by defendant reflect a person with personal problems rather than one bent on a life of crime. Finally, counsel observed that the defendant's only felony conviction was the offense involved in the case at bar.

The State argued that the defendant was a poor candidate for probation given his past performance, and recommended against resentencing the defendant to probation. The State recommended that the defendant be sentenced to the penitentiary for whatever term the court felt appropriate.

The trial court agreed that the defendant's misconduct has been mainly the result of "self-satisfaction and alcoholism," but felt that the court had a responsibility to protect society from the defendant's conduct whatever his motivation happened to be. The court indicated that the defendant had failed to take advantage of the numerous opportunities he had been given to rehabilitate himself and that the defendant required a strict, controlled environment that could only be obtained in the

Department of Corrections. The court then sentenced the defendant to the maximum term of imprisonment for a Class 3 felony, 3 1/3 years to 10 years, this sentence to run concurrently with the sentence of 364 days imprisonment which the defendant had received for driving while his license was revoked, the offense which formed the basis of the revocation in the case at bar.

■■ ■ The first issue raised by the defendant is whether double jeopardy bars the revocation of the defendant's probation once he has been found guilty of the offense which forms the basis of the revocation. The defendant admits that the courts of Illinois have consistently held that the State may seek both a revocation of a defendant's probation and a criminal conviction based on the same conduct. (*People v. Ward* (1980), 80 Ill. App. 3d 253, 399 N.E.2d 728, *appeal denied* (1980), 81 Ill. 2d 598; *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766; *People v. Howell* (1977), 46 Ill. App. 3d 300, 360 N.E.2d 1212; *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 826, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 559, 97 S. Ct. 1139.) Yet, the defendant asks that we follow the reasoning of the dissents in *Vahle* and *Ward* and the special concurring opinion in *People v. Bone* (1979), 70 Ill. App. 3d 972, 389 N.E.2d 575, without providing any basis for this change of position except to say that the majority opinion of this court in *Ward* was incorrect. We need not decide this issue on the merits, however, because by failing to bring this issue to the attention of the trial court, the defendant has waived its consideration on review. Nor do we find the failure of defense counsel to raise the issue to be the ineffective assistance of counsel, where this decision of counsel not to raise the issue is supported by every decision of the courts of Illinois on the subject.

Remaining is the question of whether the sentence imposed is excessive and should be reduced. By citing *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, and *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, the defendant assumes that the standard of review utilized following the February 1, 1978, effective date of the new sentencing act applies to this case. This assumption is incorrect.

■■ Where the defendant was placed on probation prior to the effective date of the new sentencing act, he has no statutory right to elect between being sentenced under the new sentencing scheme or that in effect at the time of the commission of the offense. (*People v. Kistenmacher* (1979), 77 Ill. App. 3d 704, 396 N.E.2d 592.) Even where the defendant has elected to be sentenced under the old statutory sentencing scheme, the standards set forth in the new sentencing act do not apply. *People v. Milam* (1980), 80 Ill. App. 3d 245, 399 N.E.2d 703.

■■ ■ Under the old law, the appropriate standard for reviewing a sentence is whether the defendant has demonstrated an abuse of

discretion on the part of the sentencing judge. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) When a reviewing court is requested to exercise its power to reduce a sentence, that power is to be exercised cautiously (*People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344), and the standard for determining whether a reduction is necessary is not merely judicial clemency. *People v. Aristole* (1971), 131 Ill. App. 2d 175, 268 N.E.2d 227.

Under the prior sentencing act, "for a Class 3 felony, the maximum term shall be any term in excess of one year not exceeding 10 years" (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(b)(4)), and "* * * the minimum term shall be 1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court" Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(4).

In the case at bar, the trial court specifically referred to the defendant's prior criminal history as indicating a lack of rehabilitative potential in the defendant. We can, therefore, find no abuse of discretion on the part of the trial court in imposing this sentence.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.