STATE of South Dakota, Plaintiff and Appellee,

v.

James MURPHY, Defendant and Appellant.

Nos. 18067, 18068.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1993.

Decided Sept. 15, 1993.

---

PER CURIAM.

James Murphy (Murphy) appeals his sentences on two counts of third degree burglary and three counts of intentional damage to property. We affirm.

## FACTS

On October 11, 1990, state filed an information charging Murphy with four counts of third degree burglary (SDCL 22–32–8). On the same date, state filed a second information charging Murphy with seven counts of first degree intentional damage to property (SDCL 22–34–1). Both third degree burglary and first degree intentional damage to property are Class 4 felonies punishable by up to ten years imprisonment in the state penitentiary and/or a fine of ten thousand dollars. SDCL 22–32–8, 22–34–1, 22–6–1(6).

Pursuant to a plea bargain, Murphy subsequently entered guilty pleas to two counts of third degree burglary and three counts of first degree intentional damage to property. State dismissed the balance of the charges. Murphy's sentencing took place on November 2, 1990. Murphy was placed on probation for four years and received a suspended imposition of sentence on both counts of third degree burglary and on all three counts of first degree intentional damage to property. As a condition of his probation, Murphy was required to serve thirty days in the county jail on each count, consecutively, for a total of 150 days. Also as a condition of his probation, Murphy was required to, "remain on his good behavior and obey all laws of the City, State, and Nation."

On July 10, 1992, state filed an amended petition for revocation of Murphy's probation alleging, "[t]hat on or about March 21, 1992, James A. Murphy committed the offense of SIMPLE ASSAULT, in violation of SDCL 22–18–1.1(4) and in violation of condition # 1 of his probation." A hearing on the petition was conducted on July 17, 1992. Murphy admitted the allegations of the petition during the hearing. The state's attorney also indicated that Murphy had previously entered a plea of guilty to the simple assault charge and that he had been sentenced for that offense. The state's attorney went on to briefly describe the incident leading to the simple assault charge and alleged that Murphy had raised a bat or a club in a threatening manner during the incident. When the trial court asked Murphy if he had a bat during the incident, Murphy responded:

No, sir. I had a baseball program folded up—not a baseball—a basketball program. At no time did I raise my hands, Your Honor. The reason I did take the simple assault was because my attorney recommended it. I did not at any time threaten anybody with a weapon.

At the conclusion of the July 17 hearing, the trial court revoked the suspended imposition of Murphy's previous sentences for burglary and intentional damage to property. Disposition of the matter was continued pending an update of Murphy's presentence report. Murphy's counsel also expressed a desire to present some limited testimony on the circumstances of the simple assault in order to assist the court in determining what would be an appropriate disposition.

The continued hearing was ultimately held on September 8, 1992. During the hearing, the police officer who investigated the simple assault and a witness to the assault both testified to Murphy's use of a "stick" during the incident. During his own testimony, Murphy admitted carrying a "stick" in the assault incident and further admitted to the trial court that he had lied about the stick during the previous hearing.

At the conclusion of the hearing, just prior to sentencing, the trial court made a lengthy statement referencing Murphy's personal history, his propensity toward violence and the fact that Murphy had lied during his previous appearance in court. At the conclusion of the statement, the trial court sentenced Murphy to ten years in the penitentiary on each of the two burglary counts and on each of the three counts of intentional damage to property. All five sentences were ordered to run concurrently with credit for time served. Murphy appeals.

### ISSUE ONE

DID THE TRIAL COURT ABUSE ITS DISCRETION IN CONSIDERING MURPHY'S LIES TO THE COURT WHEN IT IMPOSED MURPHY'S SENTENCES?

■ A proceeding to revoke probation is not a criminal prosecution. *State v. Burkman*, 281 N.W.2d 442 (S.D.1979). Proof suf-ficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. *Id.* All that is required is that the evidence and facts be sufficient to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation. *Id.* Where probation is granted on a suspended imposition of sentence, the sentence is imposed on revocation. *Id.* The court may impose any sentence it could have originally imposed. *Id.* The sentencing judge exercises a broad discretion in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Goodale*, 86 S.D. 458, 198 N.W.2d 44 (1972). Where this Court is asked to review a punishment within statutory limits, the question is whether the trial court abused its discretion. *State v. Reed*, 451 N.W.2d 409 (S.D.1990). Here, Murphy contends that the trial court abused its discretion in imposing five concurrent ten year prison terms by giving undue consideration to the fact that he lied during his probation revocation/sentencing hearing. We disagree.

In *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582, 590 (1978), the U.S. Supreme Court observed that, "[a] defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." The Court held:

Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

Grayson, 438 U.S. at 55, 98 S.Ct. at 2618, 57 L.Ed.2d at 592.

South Dakota law on this issue is to the same effect. In *State v. Carsten,* 264 N.W.2d 707, 709 (S.D.1978), this Court recognized that, "[t]he character of the defendant as reflected in his conduct before the court is properly considered by a sentencing judge." Thus, this Court chose to follow a line of federal authorities holding that, "a defendant's lack of candor at trial or at sentencing is among the factors that a trial court may permissibly take into account in imposing sentence." *Id.*

Murphy attempts to distinguish *Carsten* on three foundations. First, he asserts that the trial court in *Carsten* considered the defendant's dishonesty in combination with other factors while the trial court in the instant case made clear that the only reason he was not accepting the sentencing recommendation of the probation officer was because Murphy lied. The record, however, reflects otherwise.

> During sentencing, the trial court stated: Your history as I read it is just an amazing history. You have athletic ability, your marks say you had good marks and then they just go down. But for some reason or another, I have a lingering feeling that you are really a man of violence. You lied when you appeared. I recall the whole colloquy, and I gave you an opportunity to recant and you didn't.

These remarks make clear that the trial court did not rely solely on Murphy's lies in determining his sentence. They reflect that the trial court conducted a review of Murphy's entire history, including his scholastic record, in attempting to fashion an appropriate sentence. They further reflect the trial court's severe concern with Murphy's propensity toward violence. Thus, the trial court complied with the aim of a sentencing court as this court outlined it in *Carsten:* " 'The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it.' " *Carsten,* 264 N.W.2d at 709 (quoting *United States v. Hendrix,* 505 F.2d 1233, 1235–36 (2d Cir.1974)). The trial court's remarks reflecting consideration of Murphy's "history" further tend to support a conclusion that the trial court considered other pertinent factors in sentencing such as, "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *State v. Degen,* 396 N.W.2d 759, 760 (S.D.1986).

Second, Murphy seeks to distinguish *Carsten* on the basis that the defendant's perjury in *Carsten* was directly related to the crime for which sentence was imposed while Murphy's lies were related to his probation violation (i.e., the simple assault). This argument, however, ignores the relevance of a defendant's lies in the sentencing process. The relevance is not that the defendant perjured himself in his own defense. Rather, the relevance is the reflection the lies cast on the defendant's character as a whole. As this Court observed in *Carsten:*

> "The appellant urges in substance that to punish him by an enhanced sentence for perjury amounts to a kind of conviction for another crime without the safeguards of indictment and trial. But this ignores the nature of the sentencing process as it exists in our system and of the factors the trial judge may consider in exercising a frequently enormous range of discretion. If there is no clear consensus on these factors, it is certainly clear that they include, as aggravating circumstances, conduct that is not literally 'criminal,' or at least not been duly adjudged criminal in the case in which sentence is being imposed. Prior convictions may cause a heavier sentence, though the defendant has already 'paid' for them. A general course of dissolute, irresponsible, shiftless, or dangerous behavior may be deemed to call for longer incarceration though none of its components are, strictly, 'crimes.' "

*Carsten,* 264 N.W.2d at 709 (quoting *Hendrix, supra.*). Based upon the foregoing, we find little significance in the fact that Murphy's lies to the trial court were related to his probation violation rather than to his principal offenses.

Third, Murphy attempts to distinguish *Carsten* on the basis that the trial court in *Carsten* considered the defendant's prospects for rehabilitation while the trial court in his case did not. In *Carsten,* the trial court

made the following comments concerning probation and sentencing:

> "[T]o be a proper person for probation or some sort of suspended sentence, it's necessary that I'm convinced that he's being truthful and candid with me . . ."

> \*     \*     \*     \*     \*     \*

> "The reason I've sentenced you to the Penitentiary instead of putting you on probation or some type of suspended imposition is that your employment history is not real good, . . . and secondly, I don't believe you've been honest with the Court in relation to what occurred on that particular occasion."

*Carsten*, 264 N.W.2d at 708. In the instant case, the trial court made the following comments concerning probation and sentencing:

> Intensive probation, no. That situation the other night or that time that occurred could have escalated into a tremendous violence. Kids could have got hurt. But more importantly is that you were before me on that with your attorney . . .

> [a]nd I basically said to you if you lie to me and I find out that you lied to me, I will not buy the recommendations of the probation officer.

In *Carsten*, the trial court rejected probation because of the defendant's lies and employment history. In the instant case, the trial court rejected probation because of the defendant's lies and violent acts. Again, we find little distinction between the two cases.

It follows from the above analysis, that there is no basis on which to avoid application of *Carsten* in resolution of Murphy's arguments. Based upon *Carsten, supra* and *Grayson, supra*, we find no abuse of discretion in the trial court's consideration of Murphy's lies in setting his sentence.

### ISSUE TWO

DID THE TRIAL COURT VIOLATE THE DOUBLE JEOPARDY PROVISIONS OF THE STATE AND FEDERAL CONSTITUTIONS BY SENTENCING MURPHY FOR HIS PROBATION VIOLATION RATHER THAN HIS ORIGINAL OFFENSES?

■ The constitutional guarantee against double jeopardy protects against multiple punishments for the same offense. *State v. Grey Owl*, 316 N.W.2d 801 (S.D.1982) (citing *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931)). Quoting the trial court's statement of concern with the violence Murphy exhibited during the simple assault incident, Murphy contends that the trial court was, in reality, sentencing him for the simple assault rather than his burglary and intentional damage to property offenses. Because he had already been sentenced for the simple assault, Murphy argues that the trial court's sentences in the instant case constituted multiple punishment for the same offense in violation of the principles of double jeopardy. We disagree.

In *U.S. v. Rife*, 835 F.2d 154 (7th Cir.1987), the defendant pled guilty to the charge of unlawful possession of food stamps and was placed on probation. During her probationary period, the defendant told her probation officer that she had frequently delivered marijuana to her imprisoned husband. The defendant's probation was subsequently revoked on that foundation and the defendant was sentenced to three years in prison for her original offense. The defendant argued on appeal that her sentence was excessive because the district court had focused on her drug courier activities when it pronounced her sentence. The Court of Appeals held that, "[a] district court is at liberty to consider a wide range of factors when imposing sentence. This court will not question the relative importance placed on one factor over another. *[The defendant] has failed to demonstrate that the district court relied on constitutionally impermissible factors.*" *Rife*, 835 F.2d at 156 (citations omitted) (emphasis added).

This view is consistent with the general rule followed by the federal courts that:

> [T]he sentencing court [must] apply the sentencing range calculated for the initial crime. Because the probation-violating conduct had not yet occurred at the time of initial sentencing, courts have reasoned that any higher sentence justified by the later conduct was not "available" when the initial sentence was imposed. A sentenc-

ing court may consider the probation-violating conduct in selecting the appropriate sentence within the range, but it may not use the later conduct to calculate a different range.

*U.S. v. Dixon,* 952 F.2d 260, 261 (9th Cir. 1991) (citations omitted). *Accord, U.S. v. White,* 925 F.2d 284 (9th Cir.1991).

These authorities are also consistent with the conclusion of the Appellate Court of Illinois in *People v. Ward,* 80 Ill.App.3d 253, 35 Ill.Dec. 662, 399 N.E.2d 728 (Ill.App.Ct.1980), relied upon by Murphy in the present case. In fact, we find the conclusion in *Ward* particularly applicable to Murphy's case:

> [T]he sentencing judge may, indeed must, consider a convicted criminal's potential for rehabilitation in determining the proper sentence. Here the judge has clearly indicated that it is his belief that only a penitentiary sentence will deter this offender from committing more crimes. Previously, defendant had been sentenced to a period of three years probation for burglary. Within eight months he was involved in another crime. Obviously, the judge found the rehabilitative potential of this defendant weak. It was, therefore, proper for the judge, in determining sentence, to consider the probation violation in relation to the defendant's potential for rehabilitation.

*Ward,* 35 Ill.Dec. 662, 399 N.E.2d at 733 (citations omitted).

As for Murphy's double jeopardy contentions, as reasoned by the Michigan Court of Appeals in ruling on a similar issue:

> In [probation violation] proceedings, the focus is on whether one who has already been convicted of a crime violated a term of probation, and whether probation should be revoked. If a judge finds that a probationer violated his probation by committing an offense, the probationer is neither burdened with a new conviction nor exposed to punishment other than that to which he was already exposed as a result of the previous conviction for which he is on probation.

*People v. Johnson,* 191 Mich.App. 222, 477 N.W.2d 426, 428 (Mich.Ct.App.1991).

 Based upon the above authorities, we find no double jeopardy violation in the trial court's consideration of Murphy's simple assault offense in setting the sentence on the revocation of Murphy's probation.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.

Richard A. SCHLEUSENER, Plaintiff and Appellee,

v.

The SOUTH DAKOTA BOARD OF REGENTS, Defendant and Appellant.