THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND VAHLE, Defendant-Appellant.

Fourth District   No. 14046

Opinion filed May 26, 1978.

STOUDER, J., dissenting.

Richard J. Wilson and Richard E. Cunningham, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and James G. Condon, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County, defendant, Raymond Vahle, was convicted of burglary and sentenced to a term of 1½ to 5 years' imprisonment to be served concurrently with a 1 to 3 year sentence he was then serving.

Defendant presents three issues for review. First, he claims the doctrines of double jeopardy and collateral estoppel barred the State from bringing him to trial for burglary after having first revoked his probation based on his commission of the same offense. Second, he claims the prosecutor's remarks to the jury during closing argument were improper and denied him a fair trial. Finally, defendant argues that he is entitled to credit for time spent in custody prior to his release on bond on the burglary charge and also for time he spent in custody pending revocation of his probation.

On November 25, 1975, a Kentucky Fried Chicken restaurant in Quincy, Illinois, was burglarized, and defendant and his uncle, Jerome Vahle, were arrested the same night and charged by information with the

burglary. Defendant posted bond on December 1 and was released. Subsequently it was learned that defendant was on probation for an earlier burglary (Case No. 73-CF-120), and a petition to revoke probation was filed on the grounds that defendant had violated the terms of his probation by committing the Kentucky Fried Chicken burglary. Defendant was reincarcerated January 7, 1976, on the probation revocation charge and has remained in custody since that time, having been unable to post the $10,000 bond.

A probation revocation hearing was held in March 1976. The State presented testimony of three police officers and the owner of the burglarized restaurant. Defendant countered with his own testimony and that of his uncle, but the court determined that a preponderance of the evidence indicated defendant had violated his probation by committing the burglary. On April 26, 1976, the court imposed on defendant a sentence of 1 to 3 years in Case No. 73-CF-120.

Defendant and his Uncle Jerome were tried for burglary by a jury on June 15, 1976. The same witnesses who had testified at the revocation hearing testified at the trial, except that the manager of the burglarized restaurant, rather than the owner, testified at trial. Officer Maddox of the Quincy Police Department stated that he was driving home from work at approximately 4 a.m. on November 25, 1975, when he saw a car with its engine running parked in front of the Kentucky Fried Chicken restaurant. Maddox also observed a person crouching next to the restaurant and when the officer pulled his car next to the parked car, the person who had been crouching ran to the back of the building and disappeared. The glass front door of the restaurant was broken out and two sets of footprints led from the car to the door, while only one set of prints led back from the restaurant to the parked car. Jerome Vahle was sitting in the passenger side of the car and Maddox arrested him.

Officer Watercutty testified that he went to the Kentucky Fried Chicken restaurant on the night in question to assist Maddox and that they both followed the tracks of the fleeing person to 15th and Jackson Streets. The defendant was arrested at 15th and Ohio Streets shortly thereafter, and Officer Maddox testified that defendant was the man he had seen fleeing from the restaurant. Glass particles were embedded in the bottom of defendant's shoes.

Defendant and Jerome Vahle admitted they were at the Kentucky Fried Chicken restaurant at the time in question, but denied committing the burglary. Defendant testified he noticed the broken glass door while driving past the restaurant and stopped to investigate the damage. Defendant explained that he fled when Officer Maddox arrived because he was on probation. The jury returned verdicts finding both Raymond Vahle and Jerome Vahle guilty of burglary.

Defendant's first contention on appeal is that the doctrines of double jeopardy and collateral estoppel barred the State from bringing him to trial on the charge of burglary after having first revoked his probation on the grounds that he had committed the same offense. Defendant cites *People v. Grayson* (1974), 59 Ill. 2d 260, 319 N.E.2d 43, in which our supreme court, relying on *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, held that the acquittal of a defendant on a charge of armed robbery precluded the State from subsequently revoking the defendant's probation based upon his commission of the same crime. The court reasoned that because an issue of ultimate fact, whether defendant was the armed robber, had been determined by a valid and final judgment, the State was collaterally estopped from relitigating that issue in any subsequent action. Defendant contends that in the instant case the only real issue of ultimate fact, his credibility, was decided at the probation revocation hearing and thus the State was estopped from relitigating that issue in a burglary trial.

■■ The Second District Appellate Court in *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 836, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 559, 97 S. Ct. 1139, decided precisely the issue presented here by distinguishing *Grayson* and holding that the State was collaterally estopped from relitigating an issue in a second prosecution only if the earlier decision on that issue negatived the possibility of guilt in the later prosecution. In *Warne*, as in the case at bar, the probation revocation hearing resulted in a finding that defendant committed the criminal act, and the court therefore ruled that the State was not precluded from prosecuting the defendant on the burglary charge. The view in *Warne* was followed in *People v. Howell* (1977), 46 Ill. App. 3d 300, 360 N.E.2d 1212. Defendant Vahle acknowledges this adverse ruling, but urges this court to refuse to accept the "artificial limitation" placed on *Grayson*.

We believe the *Warne* court's limitation on *Grayson* was proper and is controlling here. As the Supreme Court noted in *Ashe*, the doctrine of collateral estoppel as applied in criminal cases is a narrow one. Justice Stewart went to great lengths to point out that at Ashe's first trial, "The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." (397 U.S. 436, 445, 25 L. Ed. 2d 469, 476, 90 S. Ct. 1189, 1195.) It was the jury's determination of that factual issue in a manner favorable to the defendant which precluded the subsequent relitigation of the same issue in Ashe's second trial. Justice Stewart noted:

> "The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing

the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." (397 U.S. 436, 446, 25 L. Ed. 2d 469, 477, 90 S. Ct. 1189, 1195.)

Similarly, Justice Underwood, in *Grayson*, pointed out that the decision of the court in that case was based on "the circumstances present here," the circumstances being the acquittal of the defendant based on the jury's determination that he was not one of the robbers. (*Grayson*, 58 Ill. 2d 260, 265, 319 N.E.2d 43, 46.) It was the prior acquittal which served as the gravamen of both the *Ashe* and *Grayson* decisions.

■■ In the present case defendant was not acquitted at the revocation of probation hearing; he was convicted. The trier of fact at the first proceeding did not find that defendant was not one of the burglars, but, on the contrary, found that defendant had committed the act charged. There was no determination made in the revocation proceeding which negated the possibility of guilt in the later prosecution (Annot., 9 A.L.R.3d 203, 225, 243 (1966)), nor was the result of the earlier hearing inconsistent with the conviction of defendant in the subsequent trial. Therefore, we conclude that collateral estoppel, as enunciated in *Grayson* and *Ashe*, is inapplicable to the instant case, and the State was not precluded under that doctrine from trying defendant for burglary after having first revoked his probation based on his commission of the same criminal act.

■■ Furthermore, we also agree with the *Warne* court that defendant's reliance on the doctrine of double jeopardy is misplaced. The constitutional concept of double jeopardy prevents multiple prosecutions and punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) But, defendant in the instant case was not twice tried or punished for the same offense. In the revocation of probation hearing, defendant was tried for violating the terms of his probation, not for the substantive offense of burglary. The revocation of his probation was not punishment for the subsequent offense of burglarizing the Kentucky Fried Chicken restaurant. Rather, revocation of probation was a delayed sentencing for the criminal act of which defendant was originally convicted. (*People v. Morgan* (1965), 55 Ill. App. 2d 157, 204 N.E.2d 314.) In other words, at the revocation proceeding defendant Vahle was sentenced to a term of 1 to 3 years for the burglary he committed in Case No. 73-CF-120. In the instant case, defendant was sentenced to 1½ to 5 years for the burglary of the Kentucky Fried Chicken restaurant. Both the offenses and the punishments were separate and distinct. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.) A probationer who commits criminal acts is liable for the

consequences of such acts both by indictment and conviction for the crime, and by having his probation revoked. The two are not mutually exclusive nor does one bar the other. We find the proper rule succinctly stated in 22 C.J.S. *Criminal Law* §240, at 631 (1961): "If probation * * * is revoked because of an allegation that accused has subsequently committed another crime, his trial for such crime does not constitute double jeopardy."

Had defendant been tried and convicted on the second burglary charge before the revocation proceeding, we would not say that a hearing to revoke his probation on grounds of his prior conviction was double jeopardy. The case at bar is merely the reverse side of the coin. Were we to find double jeopardy in this case, then a convicted criminal who receives probation would know that he can commit another crime and receive only one prison sentence for the two separate crimes. "Two crimes for the price of one" is not the kind of bargain that should be tolerated.

The attempt by defendant to require this court to consider probation revocation proceedings and criminal proceedings based on the same underlying criminal conduct as alternatives and elect between them was raised once before without success. (See special concurrence of Stouder, J., in *People v. Whitt* (1974), 16 Ill. App. 3d 824, 828-29, 306 N.E.2d 882.) However, we view the resolution of this question to be a matter of legislative policy.

Defendant's second claim is that certain remarks made by the State during closing argument caused or allowed the jury to ignore the presumption of innocence and thereby deprive defendant of a fair trial. The objected-to passage is as follows:

"Ladies and gentlemen, I am going to conclude this thing, but I have to tell you one thing, one more thing.

In criminal law in this country and in this state, there are four phases of criminal law, criminal prosecution.

First, is the arrest and investigation by the police department.
Second, there is the prosecution by the State's Attorney's Office.
Third, is a decision by the jury.
And, fourth, there is sentencing by the Judge.

Now, if our criminal justice system breaks down in any one place, then we do not have justice, we go back to the jungle.

The defendant's got it on his side, because if she breaks down in one place we are through.

In this case, there has been a good and competent investigation. We have prosecuted and, now, ladies and gentlemen, it is your turn.

Thank you."

It is argued that the clear import of these remarks was to inform the jury

that a good and competent investigation and prosecution overcomes the presumption of innocence and makes it the jury's function to convict the defendant. Defendant relies primarily on *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577.

■■ We do not find *Hopkins* to be applicable to this case, and we do not believe defendant Vahle was prejudiced by the prosecutor's remarks. The *Hopkins* decision was based on the prosecutor's reference during closing argument to his personal belief in the defendant's guilt. The objected-to remarks in this case cannot be construed as an expression of the prosecutor's personal belief that defendant was guilty. The argument that a good and competent investigation had been completed and that defendant had been proven guilty, is not improper in an adversary proceeding. Moreover, we do not construe the specified remarks of the prosecutor to inform the jury of its duty to convict the defendant. On the contrary, the prosecutor informed the jury that the third phase of a criminal proceeding was "a decision by the jury." The prosecutor had earlier explained to the jury its decision-making function by saying:

> "You have the age old job of any jury, and I hope you don't feel sorry for yourselves because every jury always has to determine the truth and that is why we call this a search for the truth because you have to decide what is true."

We also note that the court properly instructed the jury on the presumption of innocence and the burden of proof. The State's closing argument was proper, and we find no prejudice to defendant as a result of it.

Finally, defendant contends he is entitled to credit for time he spent in custody prior to his release on bond on the second burglary charge and also for time he spent in custody after being reincarcerated pending revocation of his probation. The applicable statute reads:

> "The offender shall be given credit on the maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(b).)

Defendant was arrested on the Kentucky Fried Chicken burglary charge on November 25, 1975, and released after posting bond on December 1, 1975. He was reincarcerated on January 10, 1976, for breaching the terms of his probation and has remained in custody since that time. Department of Corrections records indicate defendant is not being given credit on the sentence imposed in the instant case for any period of incarceration prior to May 1976, the time at which defendant was returned to the Adams County jail to stand trial on the burglary charge. However, defendant is receiving credit for his incarceration from January to May 1976, on Case No. 73-CF-120, the charge for which probation was revoked.

The State concedes that defendant is entitled to credit on the instant

charge for his incarceration from November 25, 1975, to December 1, 1975. But, the State contends defendant is not entitled to credit on the instant charge for his incarceration, January to May 1976, because that incarceration was not a result of the instant burglary offense as required by section 5—8—7(b). (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(b).) We agree.

■■ The applicable statute provides that a defendant is to be given credit only for those times spent in custody which were a "result of the offense for which the sentence was imposed." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(b).) In the instant case sentence was imposed for the offense of burglary, while the record is clear that defendant was incarcerated in January 1976 because he violated the terms of the probation which followed his earlier conviction. After defendant's probation was revoked, he was sentenced on the original charge for which he had received probation. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(2)(e).) Thus, defendant's incarceration from January to May 1976 was a result of the offense he was convicted of in Case No. 73-CF-120. The causal relationship between the earlier offense and defendant's incarceration pending probation revocation is apparent when it is noted that defendant was free on bond on the burglary charge and would have continued to be free had he not been on probation for the earlier offense. Defendant is receiving proper credit in Case No. 73-CF-120 for the time he spent in custody prior to revocation of probation in that case. The trial court is directed on remand to credit the defendant on the instant charge for the time he spent in custody from November 25 to December 1, 1975.

Judgment affirmed and remanded with directions.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully dissent from the opinion of my colleagues. I believe defendant was placed twice in jeopardy and his conviction for burglary should be reversed. Before embarking on my reasons for disagreeing with the majority, it would be wise to examine some of the precepts of the doctrine of double jeopardy.

The protection afforded by constitutional guarantees against double jeopardy are threefold. The guarantee prohibits a second prosecution after acquittal, a second prosecution after conviction and multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) The reasons for these protections are stressed in *United States v. Wilson* (1975), 420 U.S. 332, 343, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021:

"The interests underlying these three protections are quite similar. When a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense."

For double jeopardy to apply, it is unnecessary that a person be tried twice for the same action; so long as he has been put in jeopardy, the guarantee against subsequent jeopardy attaches. *Gavieres v. United States* (1911), 220 U.S. 338, 55 L. Ed. 489, 31 S. Ct. 421.

Relying on *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 836, and *People v. Morgan* (1965), 55 Ill. App. 2d 157, 204 N.E.2d 314, the majority concludes that defendant has not been subjected to double jeopardy, but does so without considering the same evidence test. To determine whether or not two actions are prosecutions for the same offense, the test is: Would the same evidence sustain the proof of each offense? (*People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797.) If the same evidence would sustain proof of each offense, then prosecution of the second offense is barred by double jeopardy. When this test is applied to the facts in this case, the inescapable conclusion is that defendant has been tried twice and punished twice for the same offense. The same evidence test was recently considered by the Illinois Supreme Court in *Gray*, and it would be appropriate to review that opinion.

In *Gray*, the defendant struck his wife with a gun and then shot her, which violated a protective order in a divorce proceeding enjoining defendant from striking or molesting his wife. The wife filed an emergency petition that Gray be held in contempt of court for assaulting and shooting her. Upon a finding of wilful contempt of court, Gray was sentenced to 6 months in Cook County jail. The State's Attorney was neither aware of nor informed of the contempt proceedings.

An indictment was then filed charging Gray with aggravated battery and attempt murder based on the same conduct. He was convicted of aggravated battery and sentenced to a term of imprisonment of from 1 to 3 years. Defendant appealed, claiming that he had been placed twice in jeopardy for the same offense. After discussing the principles and considerations embodied in double jeopardy, the court turned to the proper application of the same evidence test and found that "[c]onsiderations of fairness and finality, the very foundation of the double jeopardy bar, require a nontechnical evaluation of the 'same evidence' test, and a focus upon the similarity of the elements involved in the two proceedings." (69 Ill. 2d 44, 51, 370 N.E.2d 797, 800.) The court held that "[n]otwithstanding defendant's conviction and punishment for criminal contempt, he was tried and convicted a second time for the same conduct, striking and shooting his wife, in a criminal proceeding. The

finding of criminal contempt and the conviction of aggravated battery constituted double trial and double punishment for the same offense." (69 Ill. 2d 44, 52, 370 N.E.2d 797, 800.) The court concluded by rejecting the State's argument that double jeopardy did not exist because the divorce court had no jurisdiction to try felonies. Since the divorce and criminal courts are courts of the same sovereign and double jeopardy bars two courts within one sovereign from trying a person for the same offense, the guarantee against double jeopardy had been violated.

This court in *People v. Holmes* (1977), 54 Ill. App. 3d 843, 368 N.E.2d 1106, recently considered the *Gray* holding. The defendant in *Holmes* was enjoined in a divorce proceeding from "accosting or molesting" his wife. Thereafter defendant's wife filed an emergency petition for a rule to show cause which alleged that defendant had violated the injunction by firing a hand gun at plaintiff three or four times. A hearing on the petition was held and plaintiff was sworn and testified. The hearing was continued several times by agreement of the parties. After the decree of divorce was granted to the parties, the issue of the violation of the injunction was never brought up again by either party and no order was ever entered regarding the alleged contempt. The State's Attorney of Will County was not a party to the contempt hearing, and was not given notice of the filing of the petition or of the fact that a hearing was being held. After testimony was heard on the petition, the defendant was also arrested and charged by criminal complaint with armed violence.

Prior to trial, defendant's motion to dismiss based on claims of double jeopardy was granted and the State appealed. The issue decided by the appellate court was whether double jeopardy prohibited defendant's criminal prosecution for armed violence based upon the same acts which were previously the subject of a contempt hearing in a divorce action. Following the *Gray* case, the court held that when the contempt proceeding was instituted and some evidence in support of the petition was heard, jeopardy attached and criminal prosecution could not thereafter be instituted for the conduct which formed the basis of the petition. The lack of a final determination on the contempt petition was not sufficient to preclude the existence of double jeopardy.

I believe a nontechnical application of the same evidence test establishes the defendant was prosecuted and punished twice for the same offense, the burglary of the Kentucky Fried Chicken restaurant. The three police officers who found defendant at the scene gave the same testimony in each proceeding. The witnesses in each proceeding, with the exception of the representative for the owners of the burgled property, were the same. While the representative for the owner or owners of the burgled premises was different in each proceeding, the substance and content of witnesses' testimony was the same in each proceeding. In both

proceedings the evidence tended to establish defendant's participation in the burglary of the Kentucky Fried Chicken restaurant on November 25, 1975. Since the same evidence formed the basis of two prosecutions and two punishments, defendant was tried twice for the same offense in violation of the double jeopardy clause, and his conviction for burglary should be reversed.

I cannot agree with my colleagues that the opinion in *People v. Warne* (1976), 39 Ill. App. 3d 894, 350 N.E.2d 836, correctly applies the concepts of double jeopardy. That decision was rendered prior to the recent Illinois Supreme Court decision in *Gray*. Furthermore, *Warne* suffers from the same deficiency as the majority opinion, the failure to consider the same evidence test that is essential in deciding claims of double jeopardy. The same evidence test was applicable when *Warne* was decided (see *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180) and has been recently reaffirmed. (See *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 222.) By failing to consider the same evidence test, the court in *Warne* reached an erroneous conclusion, as does the majority here.

The primary thrust of *Warne* was directed at issues of collateral estoppel. The opinion summarily treats the broader concept of double jeopardy without considering the same evidence test.

My colleagues cite *People v. Morgan* (1965), 55 Ill. App. 2d 157, 204 N.E.2d 314, for support of the proposition that revocation of probation is delayed sentencing for the criminal act of which defendant was originally convicted. The court in *Morgan* believed their conclusion that the defendant was not subjected to double jeopardy was justified in part because of the different standards of proof involved in probation revocation proceedings and in criminal trials, citing *People v. Kuduk* (1943), 320 Ill. App. 610, 51 N.E.2d 997. This latter principle was rejected in *People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43, and the former principle of delayed sentencing was not even discussed. If the theory of delayed sentencing had been relevant in *Grayson*, then the result in *Grayson* should or could have been different. *Grayson* effectively overruled the *Kuduk* case, the principal case relied upon in *Morgan*, and consequently reliance on *Morgan* by the court in *Warne* or my colleagues is misplaced.

My colleagues have suggested that the theory of the defendant should be addressed to the legislature. What they fail to recognize is that principles of double jeopardy are of constitutional dimensions and, consequently, are within the ambit of judicial consideration. That the questions raised by the defendant are properly the subject of judicial determination is supported by the opinions of our supreme court in *Gray* and *Grayson*, both of which represent departures from traditional rules.

One of the protections offered by the bar against double jeopardy is that defendant is not forced to go through two complete adversary proceedings for the same offense. In a probation revocation, once the State has established a *prima facie* case, the defendant must put on evidence or his probation will be revoked. Because of this rule, the State can proceed with a revocation proceeding first and thereby pressure the defendant into revealing whatever evidence he would introduce at a criminal trial. The knowledge thereby gained can then be used by the State to refine its case for the criminal trial. Yet, this type of procedure was condemned in *Ashe v. Swenson* (1970), 397 U.S. 436, 437, 25 L. Ed. 2d 469, 477, 90 S. Ct. 1189:

> "In this case the State in its brief has frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution: 'No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial.' But this is precisely what the constitutional guarantee [against double jeopardy] forbids."

Here, it is apparent that the State subjected the defendant to two adversary proceedings for the same offense and by so doing had the opportunity to gain valuable information which could be used in a subsequent criminal trial. We believe the procedure employed by the State is among those prohibited by the above-quoted passage. Once the State subjected the defendant to an adversary proceeding, it could not thereafter relitigate in a second proceeding the issues that were presented in the first.

In summary, proper application of the appropriate test establishes that defendant's guarantees against being placed twice in jeopardy for the same offense have been violated. Defendant's conviction should be reversed.