(Nos. 76152, 76153, 76154, 76272 cons
 (No. 76155

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. EDNA MAE FARMER *et al.*, Appellees (Peggy June Myers, Appellee and Cross-Appellant).

*Opinion filed April 20, 1995.*

Roland W. Burris, Attorney General, of Springfield, and Thomas J. Brown, State's Attorney, of Pontiac (Rosalyn Kaplan, Solicitor General, and Arleen C. Anderson and Kathy Shepard, Assistant Attorneys General, of Springfield, of counsel), for the People.

Carey J. Luckman, of Pontiac, and Lori S. Klingman, of Wilmette, for appellee and cross-appellant Myers.

Daniel D. Yuhas, Deputy Defender, and Judith L. Libby, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellees Farmer, Henry and Flores.

JUSTICE NICKELS delivered the opinion of the court:

These four consolidated appeals by the State present the common issue of the constitutionality of the sentencing provisions imposing felony penalties for the offense of possessing contraband in a penal institution (720 ILCS 5/31A—1.1(b) (West 1992)). By cross-appeal, defendant Peggy June Myers challenges the constitutionality of the provisions imposing felony penalties for the offense of bringing contraband into a penal institution (720 ILCS 5/31A—1.1(a) (West 1992)).

BACKGROUND

In unrelated prosecutions in the circuit court of Livingston County, defendants Myers (Nos. 76154 & 76155), Edna Mae Farmer (No. 76152), Mary Henry (No. 76153) and Loretta Flores (No. 76272) were each charged with one count of bringing contraband into a penal institution (720 ILCS 5/31A—1.1(a) (West 1992)) and one count

of possessing contraband in a penal institution (720 ILCS 5/31A—1.1(b) (West 1992)). The records of the proceedings below reflect that the defendants were charged after each allegedly visited either the Pontiac Correctional Center or the Dwight Correctional Center, where they were subjected to routine searches for contraband. Cannabis was allegedly discovered as a result of the searches of defendants Myers and Henry. A weapon, namely a knife, was allegedly discovered during a search of defendant Farmer. A search of defendant Flores allegedly resulted in the discovery of phencyclidine (PCP).

In the case of People v. Myers (Cir. Ct. Livingston Co.), No. 93—CF—120, the defendant moved for the dismissal of both of the charges against her on the basis that the felony penalties prescribed for the offenses of possessing contraband in a penal institution and bringing contraband into a penal institution were constitutionally impermissible. The trial court denied defendant Myers' motion to dismiss the charge of bringing contraband into a penal institution, but granted the motion to dismiss the charge of possessing contraband in a penal institution. The trial court reasoned that while the offense of bringing contraband into a penal institution required a knowing act, possessing contraband in a penal institution was an absolute liability offense. The trial court ruled that the applicable felony penalty was excessive punishment for an offense for which no culpable mental state is required. In its written order dismissing the charge, the court ruled that the applicable sentencing provision violated State and Federal equal protection and due process guarantees (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV), the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11) and the eighth amendment to the United States Constitution (U.S. Const., amend. VIII).

Thereafter, prior to trial in People v. Farmer (Cir. Ct. Livingston Co.), No. 93—CF—129, and People v. Flores (Cir. Ct. Livingston Co.), No. 93—CF—108, the trial court similarly declared that the applicable felony penalties for the offense of possessing contraband in a penal institution were unconstitutional. In People v. Henry (Cir. Ct. Livingston Co.), No. 93—CF—83, the court declared the applicable sentencing provision to be unconstitutional on the date set for sentencing of defendant Henry, who had already been found guilty of possessing contraband in a penal institution but not guilty of bringing contraband into a penal institution at a bench trial. The State appealed the trial court's rulings directly to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603). Defendant Myers has taken a cross-appeal from the trial court's order denying her motion to dismiss the charge bringing contraband into a penal institution. We consolidated the State's appeals and defendant Myers' cross-appeal.[1]

## ANALYSIS

### I

At the outset, we address two procedural matters involving only defendant Myers. First, we note that defendant Myers' cross-appeal seeking review of the trial court's denial of her motion to dismiss the charge of bringing contraband into a penal institution is not properly before us. The denial of a motion to dismiss criminal charges is an interlocutory order from which, generally speaking, an appeal may not be taken. That

---

[1]The trial court has stayed further proceedings in these cases (trial on the pending charges of bringing contraband into a penal institution against defendants Farmer, Flores and Myers, and sentencing of defendant Henry for her conviction of possessing contraband in a penal institution) until disposition of these appeals.

defendant Myers seeks review by way of cross-appeal is of no consequence, since a reviewing court acquires no greater jurisdiction on cross-appeal than it could on appeal. (*People v. Miller* (1966), 35 Ill. 2d 62, 68.) Accordingly, defendant Myers' cross-appeal is dismissed.

Second, we address defendant Myers' argument that the State has waived review of the trial court's ruling in her case. During the proceedings below, the State failed to raise any argument in response to defendant Myers' motion to dismiss. Defendant Myers asserts that we should affirm the trial court's ruling on the basis of the State's waiver, and need not reach the merits of the constitutional issue with respect to her case. The waiver rule is one of administrative convenience rather than jurisdiction, and the goals of obtaining a just result and maintaining a sound body of precedent may sometimes override considerations of waiver. (*People v. Bailey* (1994), 159 Ill. 2d 498, 506.) We agree with the State that relaxation of the waiver rule is appropriate here. Four cases presenting the same constitutional issue are currently before this court, but only defendant Myers claims the benefit of a general waiver by the State. Since we must decide the constitutional issue in the remaining cases, for us to refrain from applying that decision to Myers would neither promote the interests of administrative convenience nor lead to a just result.

## II

Turning to the merits of the State's appeals, section 31A—1.1 of the Criminal Code of 1961 (Code) (720 ILCS 5/31A—1.1 (West 1992)) provides, in pertinent part:

"(a) A person commits the offense of bringing contraband into a penal institution when he knowingly and without authority of any person designated or authorized to grant such authority (1) brings an item of contraband into a penal institution or (2) causes another to bring an item of contraband into a penal institution or (3) places

an item of contraband in such proximity to a penal institution as to give an inmate access to the contraband.

(b) A person commits the offense of possessing contraband in a penal institution when he possesses contraband in a penal institution, regardless of the intent with which he possesses it."

The phrase "item of contraband" encompasses various objects and substances specifically enumerated in the statute. (720 ILCS 5/31A—1.1(c)(2) (West 1992).) Convictions under both subsections (a) and (b) carry felony penalties which vary depending on the type of contraband involved. Possession of cannabis is a Class 3 felony. (720 ILCS 5/31A—1.1(e) (West 1992).) Possession of a Schedule I or II controlled substance (such as PCP) or a weapon is a Class 1 felony. (720 ILCS 5/31A—1.1(g), (i) (West 1992).) It is an affirmative defense to the charge of possessing contraband in a penal institution that such possession "was specifically authorized by rule, regulation, or directive of the governing authority of the penal institution or order issued pursuant thereto." 720 ILCS 5/31A—1.1(k) (West 1992).

As noted above, the trial court declared the sentencing provisions for the offense of possessing contraband in a penal institution unconstitutional because they impose felony penalties for an offense which requires no mental state, or *mens rea*. The State argues, *inter alia*, that felony penalties for such absolute liability offenses are not *per se* unconstitutional, and that the felony penalties applicable here are justified by the magnitude of the threat which the prohibited items of contraband pose in a penal setting. Consequently, in the State's view, the applicable felony penalties represent a valid exercise of the State's police power. Alternatively, the State suggests that the trial court may have erred in viewing section 31A—1.1(b) as creating an absolute liability offense. According to the State, the statute might be properly interpreted to penalize only *knowing* posses-

sion of contraband, in which case defendants' constitutional objection to the sentencing provisions would be meritless.

Defendants respond that the trial court correctly interpreted section 31A—1.1(b) to create an absolute liability offense. While the trial court concluded that the sentencing provisions violate various constitutional guarantees, defendants rely primarily on principles of substantive due process in order to uphold the trial court's ruling. Defendants argue that the measure sweeps too broadly, punishing innocent as well as culpable conduct. (See generally *People v. Zaremba* (1994), 158 Ill. 2d 36; W. LaFave & A. Scott, Criminal Law § 2.12 (2d ed. 1986).) Defendants maintain that insofar as the offense imposes absolute liability, the corresponding felony penalties are unduly harsh and cannot be considered to be a reasonable means of promoting safety, order and discipline in penal institutions.

In view of the parties' arguments, as a threshold matter we must determine whether the trial court was correct in its view that possessing contraband in a penal institution is an absolute liability offense. Four different mental states—intent, knowledge, recklessness, and negligence—are respectively defined in sections 4—4 through 4—7 of the Code (720 ILCS 5/4—4, 4—5, 4—6, 4—7 (West 1992)). Absolute liability offenses are governed by section 4—9 of the Code, which provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, *or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described.*" (Emphasis added.) 720 ILCS 5/4—9 (West 1992).

Although section 31A—1.1(b) does not specify a mental state, " '[t]he mere absence of express language

describing a mental state does not *per se* lead to the conclusion that none is required.' " (*People v. Gean* (1991), 143 Ill. 2d 281, 286, quoting *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 424.) Because the offense of possessing of contraband in a penal institution is a felony, in accordance with section 4—9 of the Code this court will imply a mental state element unless a clear legislative purpose to impose absolute liability is evident. 720 ILCS 5/4—9 (West 1992); see *People v. Anderson* (1992), 148 Ill. 2d 15, 23-24; *People v. Gean* (1991), 143 Ill. 2d 281, 286; *People v. Sevilla* (1989), 132 Ill. 2d 113, 118.

Defendants argue that the plain language of section 31A—1.1(b) expressly providing that possession of contraband is an offense "regardless of the intent with which [the offender] possesses it" clearly establishes a legislative purpose to impose absolute liability. We disagree. Defendants' argument reflects a failure to properly distinguish the concept of "mental state" (or *mens rea*) from the statutory definition of "intent." As defined in the Code, the term "intent" is not synonymous with the collective term "mental state," but rather is one of the four defined mental states, the other three being knowledge, recklessness and negligence. Pursuant to section 4—4 of the Code, "[a] person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." (720 ILCS 5/4—4 (West 1992).) Typically, where a possession offense is defined to include an intent element, the State must show that the act of possession was accompanied by an objective or purpose to accomplish some result or engage in some conduct beyond the mere act of possession itself. Such offenses are of the familiar "possession *with intent*" variety. *E.g.*, 720 ILCS 550/5 (possession of

cannabis with intent to deliver or manufacture); 720 ILCS 570/401 (West 1992) (possession of a controlled substance with intent to manufacture or deliver).

Considered in this light, we believe that the reference to intent in section 31A—1.1(b) signifies only that the offender's precise purpose or objective with regard to an item of contraband is immaterial in a prosecution for possession of contraband. In other words, by making possession of contraband an offense regardless of the intent with which the offender possesses it, the General Assembly has simply dispensed with any requirement that the offender intend to smuggle the contraband to an inmate or otherwise use the contraband in a manner which interferes with the penal institution.

Examination of a related provision containing the same language confirms our interpretation. Section 31A—1.2(b) of the Code provides, in pertinent part, that "[a] person commits the offense of unauthorized possession of contraband in a penal institution by an employee when a person who is an employee *knowingly* and without authority *** possesses contraband *** in a penal institution, *regardless of the intent with which he possesses it.*" (Emphasis added.) (720 ILCS 5/31A—1.2(b) (West Supp. 1993).) Defendants' view that the phrase "regardless of the intent with which he possesses it" eliminates any mental state requirement is plainly at odds with the inclusion of the phrase in the foregoing provision which expressly requires *knowing* possession.

In support of their argument that the language in question establishes a legislative purpose to impose absolute liability, defendants cite *People v. Ryan* (1987), 117 Ill. 2d 28, and *People v. Kite* (1992), 153 Ill. 2d 40. *Ryan* involved prosecutions for unlawful possession of a weapon by a felon while confined in a penal institution. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1(b) (now codified, as amended, at 720 ILCS 5/24—1.1(b) (West 1992)).) Like

the statute in the instant cases, the applicable statutory provision in *Ryan* made possession of a weapon by a felon while in confinement a criminal offense regardless of the intent with which the offender possessed the weapon. However, contrary to defendants' argument, this court did not indicate that the statute imposed absolute liability. Rather, the court merely observed that while there was authority that possession of certain weapons by a felon *not* in confinement would be a criminal offense only if accompanied by an intent to use the weapon unlawfully against another (see *People v. Crawford* (1986), 145 Ill. App. 3d 318), this particular unlawful intent requirement did not apply to a felon confined in a penal institution. Thus, *Ryan* is inapposite.

*People v. Kite* (1992), 153 Ill. 2d 40, involved a prosecution under the successor provision to the statute considered in *Ryan*. Citing *Ryan*, this court remarked in passing that "[b]ecause culpability is not an element of the offense, it can be considered a strict liability offense." (*Kite*, 153 Ill. 2d at 44.) The sole question in *Kite* was whether the evidence at the defendant's trial warranted instructing the jury on the affirmative defense of necessity; the court was not called upon to determine what mental state was applicable to the underlying offense. The court's use of the term "strict liability" in the casual remark above was perhaps somewhat imprecise. However, the court meant to convey the same idea expressed in *Ryan* relative to the absence of an element of intent to use the prohibited weapons unlawfully against another. *Kite* does not constitute authority that the phrase in question dispenses with a mental state element.

We note that because section 31A—1.1(b) does not expressly state whether absolute liability will or will not be imposed, in ascertaining the intent of the General Assembly it is appropriate to look to sources be-

yond the statutory language (see *People v. Sevilla* (1989), 132 Ill. 2d 113, 118-19), including the available legislative history (*People v. Gean* (1991), 143 Ill. 2d 281, 287; accord *People v. Anderson* (1992), 148 Ill. 2d 15, 24 (determining legislative intent although "no legislative history is available to guide us")). After reviewing the limited legislative history to section 31A—1.1(b) in its entirety, we do not find a clear indication of a legislative purpose to impose absolute liability.

Moreover, the severity of the penalties for possessing contraband in a penal institution militates against finding that the General Assembly meant to impose absolute liability. This court has stated that "[i]t would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly." (*People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425, citing *Morissette v. United States* (1952), 342 U.S. 246, 256, 260-61, 270-71, 96 L. Ed. 288, 296-97, 299, 304-05, 72 S. Ct. 240, 246, 248, 253-54.) Accordingly, " 'where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense.' " (*Gean*, 143 Ill. 2d at 287, quoting *Sevilla*, 132 Ill. 2d at 122.) Offenders convicted of possessing contraband in a penal institution face substantial penalties ranging from a Class 4 felony to a Class X felony depending on the type of contraband involved, and it would appear unlikely that the General Assembly intended to impose these penalties without a showing of some culpable mental state.

For the above reasons, upon consideration of the language and legislative history of section 31A—1.1(b), we do not find a clear legislative purpose to impose absolute liability for possession of contraband in a penal institution. Given this conclusion, we must determine what mental state applies. (See *People v. Gean* (1991), 143 Ill. 2d 281, 288; *People v. Sevilla* (1989), 132 Ill. 2d

113, 123.) Possession offenses typically require proof of knowing possession. Two general provisions of the Code deserve mention in this regard. First, section 4—1 of the Code specifies that "[a] material element of every offense is a voluntary act." (720 ILCS 5/4—1 (West 1992).) In turn, section 4—2 provides that "[p]ossession is a voluntary act if the offender *knowingly* procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession." (Emphasis added.) (720 ILCS 5/4—2 (West 1992).) In accordance with these principles, we conclude that knowledge is the appropriate mental state element in prosecutions under section 31A—1.1(b).

### III

Having determined that section 31A—1.1(b) does not impose absolute liability, we conclude that the trial court erred in declaring the corresponding sentencing provisions to be unconstitutional. Defendants' challenge to the sentencing provisions is based primarily on due process principles. While the legislature has wide discretion in prescribing penalties for defined criminal offenses, this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. (*People v. Reed* (1992), 148 Ill. 2d 1, 11.) In determining the validity of an enactment under the due process clause, the inquiry is " 'whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " (*People v. Bradley* (1980), 79 Ill. 2d 410, 417, quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159; *People v. Kimbrough* (1994), 163 Ill. 2d 231, 242; *Reed,* 148 Ill. 2d at 11.) This standard is essentially the same as the "rational basis" test, which is applied to determine whether a statute that does not involve a suspect class or impinge on a funda-

mental right violates equal protection. (*Kimbrough*, 163 Ill. 2d at 242; *Reed*, 148 Ill. 2d at 11.) Thus, as with challenges under the equal protection clause, legislation attacked on due process grounds will be upheld if it bears a rational relationship to a legitimate State goal. *Kimbrough*, 163 Ill. 2d at 242; *Reed*, 148 Ill. 2d at 11.

It is readily apparent that in enacting section 31A—1.1(b), the General Assembly was concerned that the presence of the specified items of contraband, including, *inter alia*, weapons and drugs, among an inmate population would pose a threat to the safety of inmates and personnel alike and would impede the effective operation of penal institutions. It cannot be doubted that preventing inmates from gaining access to contraband is a valid State objective. Indeed, it has been observed that "[c]ontraband laws and regulations have been enacted in virtually every jurisdiction to keep dangerous and otherwise undesirable substances and items away from prisons and prisoners in order to maintain safety, security, order, and discipline within such institutions." (Annot., 64 A.L.R.4th 902, 909-10 (1988).) When properly interpreted to apply to *knowing* possession, section 31A—1.1(b) and the corresponding sentencing provisions are reasonably designed to insulate the penal environment from the harmful attributes of the prohibited items. It is true that, in its application to visitors to penal institutions, section 31A—1.1(b) is not limited to efforts to smuggle contraband to an inmate or otherwise use the contraband to interfere with a penal institution. However, this does not affect our conclusion that the broad measure chosen by the General Assembly prohibiting knowing possession is a valid exercise of the State's police power. While the General Assembly might have enacted a prohibition limited to possession with a particular intent, the General Assembly could reasonably conclude that to do so would leave an unacceptable

risk that the proscribed items and substances would fall into the hands of inmates. *Cf. Commonwealth v. Williams* (1990), 525 Pa. 216, 220-21, 579 A.2d 869, 871.

In addition to concluding that the sentencing provisions corresponding to section 31A—1.1(b) violated due process, the trial court declared the statutory scheme invalid on the basis of State and Federal equal protection guarantees (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV), the proportionate penalties guarantee under our State constitution (Ill. Const. 1970, art. I, § 11) and the prohibition of cruel and unusual punishment under the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). Mindful that, contrary to the view taken by the trial court, section 31A—1.1(b) does not impose absolute liability, we briefly consider the applicability of each constitutional provision in turn.

As noted above, since the challenged statute does not involve a suspect classification and does not impinge on a fundamental right, the same standard applies for determining the statute's constitutionality under the equal protection and due process clauses. (*People v. Kimbrough* (1994), 163 Ill. 2d 231, 242; *People v. Reed* (1992), 148 Ill. 2d 1, 11.) Since we have concluded that the statutory scheme does not violate principles of due process, we likewise conclude that it is valid under the equal protection clauses of the State and Federal Constitutions.

We next consider the constitutionality of the sentencing provisions with reference to the proportionate penalties clause of our State constitution. Article I, section 11, of the Illinois Constitution of 1970 provides, in pertinent part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) While this provision

places some restraint on the right of the legislature to establish penalties for crimes (*People v. Simmons* (1991), 145 Ill. 2d 264, 270), this court has repeatedly stated that "the constitutional command that 'penalties shall be proportioned to the nature of the offense' would justify interference with the legislative judgment only if the punishment was 'cruel,' 'degrading' or 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " (*People v. Gonzales* (1962), 25 Ill. 2d 235, 240, quoting *People ex rel. Bradley v. Illinois State Reformatory* (1894), 148 Ill. 413, 421; see also *People v. Hamm* (1992), 149 Ill. 2d 201, 219; *People v. Morris* (1990), 136 Ill. 2d 157, 167; *Simmons*, 145 Ill. 2d at 270.) Possession of cannabis constitutes a Class 3 felony which may be punished by two to five years' imprisonment. (730 ILCS 5/5—8—1(a)(6) (West Supp. 1993).) Possession of PCP or a weapon constitutes a Class 1 felony which may be punished by 4 to 15 years' imprisonment. (730 ILCS 5/5—8—1(a)(4) (West Supp. 1993).) While the penalties for possession of the particular items of contraband involved in the cases before us are potentially harsh, we believe the statutory scheme affords the trial court an appropriate range of sentencing options. We do not find that the sentencing scheme imposes penalties which are unconstitutionally disproportionate to the offense.

We also reject the argument that the sentencing provisions violate the eighth amendment to the United States Constitution, which prohibits cruel and unusual punishment. A majority of the members of the United States Supreme Court have concluded either that the eighth amendment contains no guarantee of proportionality between a crime and the length of a sentence of imprisonment (*Harmelin v. Michigan* (1991), 501 U.S. 957, 965, 115 L. Ed. 2d 836, 846, 111 S. Ct. 2680, 2686 (opinion of Scalia, J., joined by Rehnquist, C.J.)) or that

the eighth amendment does not require strict proportionality but "forbids only extreme sentences that are 'grossly disproportionate' to the crime" (*Harmelin*, 501 U.S. at 1001, 115 L. Ed. 2d at 869, 111 S. Ct. at 2705 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.)). Even if the latter view is correct, the sentencing scheme here does not inherently impose penalties which are grossly disproportionate to the offense. Thus no violation of the eighth amendment has been shown.

## CONCLUSION

For the foregoing reasons, we reverse the orders of the circuit court of Livingston County declaring the penalties for possessing contraband in a penal institution to be unconstitutional. The causes are remanded to the circuit court of Livingston County for further proceedings. Defendant Myers' cross-appeal is dismissed.

*Nos. 76152, 76153, 76154, 76272—*
*Reversed and remanded.*
*No. 76155—Appeal dismissed.*