THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR JEROME BAPTIST, Defendant-Appellant.

Fourth District   No. 4—96—0018

Opinion filed November 7, 1996.

Victor Jerome Baptist, of Joliet, appellant *pro se.*

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:
In June 1995, the State charged defendant, Victor Jerome Baptist, by indictment with four counts of aggravated battery for hitting two correctional officers. 720 ILCS 5/12—4(b)(6) (West 1994). In October 1995, defendant moved to dismiss, alleging, in part, that this prosecution constituted double jeopardy. The trial court denied his motions. Defendant appeals, and we affirm.

## I. BACKGROUND
In February 1995, while serving a 12-year sentence at Pontiac Correctional Center, defendant hit two prison guards. Following a February 1995 disciplinary hearing, the prison adjustment committee found defendant guilty of violating prison disciplinary rules and (1) reduced his good-time credit by one year, and (2) sentenced defendant to two years of grade C segregation.

In June 1995, the grand jury indicted defendant, charging him with four counts of aggravated battery based on the same conduct for which prison authorities had disciplined him. At a June 1995 hearing, the trial court granted the State's motion to amend two of the counts to substitute defendant's name for another name as the person charged. In October 1995, defendant filed a motion to dismiss the amended counts, alleging that the misnomer was a substantial defect which caused him substantial injustice. He also filed a motion to dismiss the entire indictment on double jeopardy grounds. The court denied both motions, and defendant appeals.

## II. ANALYSIS

### A. Double Jeopardy
Defendant argues that the sanctions imposed upon him following the February 1995 prison disciplinary hearing barred his criminal prosecution on double jeopardy grounds. In response, the State contends that (1) the prison disciplinary sanctions imposed on defendant are not "punishment" for double jeopardy purposes, and (2) even if prison disciplinary sanctions could be deemed punishment, criminal prosecution would not place a defendant in jeopardy of a

*second* punishment where, as here, the disciplinary sanctions affect only a defendant's original sentence. We agree with both of the State's arguments.

■ As a preliminary matter, we note that the United States Supreme Court has held that application of the double jeopardy clause is limited to proceedings which are " 'essentially criminal.' " *Breed v. Jones*, 421 U.S. 519, 528, 44 L. Ed. 2d 346, 355, 95 S. Ct. 1779, 1785 (1975), quoting *Helvering v. Mitchell*, 303 U.S. 391, 398, 82 L. Ed. 917, 921, 58 S. Ct. 630, 633 (1938). Because a prison disciplinary proceeding is not a criminal prosecution, it is not subject to the double jeopardy clause. *Wolff v. McDonnell*, 418 U.S. 539, 556, 41 L. Ed. 2d 935, 951, 94 S. Ct. 2963, 2975 (1974); *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994); *United States v. Newby*, 11 F.3d 1143, 1144 (3d Cir. 1993).

### 1. *Prison Disciplinary Sanctions Do Not Constitute Punishment*

■ The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The United States Supreme Court has held that the clause protects individuals against three distinct abuses: (1) prosecuting a defendant for the same conduct after an acquittal; (2) prosecuting a defendant for the same crime after conviction; and (3) subjecting a defendant to multiple punishments for the same crime. *United States v. Halper*, 490 U.S. 435, 440, 104 L. Ed. 2d 487, 496, 109 S. Ct. 1892, 1897 (1989). Defendant argues that the State committed the third abuse by attempting to punish him pursuant to the criminal prosecution after having already punished him for the same conduct by placing him in segregation and reducing his good-time credit by one year.

■ It is well settled that disciplinary sanctions imposed by prison authorities for infractions of prison regulations do not generally bar a subsequent criminal prosecution for the same conduct. *People v. Jocelyn*, 181 Ill. App. 3d 774, 778, 537 N.E.2d 1086, 1088 (1989); see *Garrity v. Fiedler*, 41 F.3d 1150, 1152 (7th Cir. 1994); *United States v. Rising*, 867 F.2d 1255, 1259 (10th Cir. 1989); *Kerns v. Parratt*, 672 F.2d 690, 691-92 (8th Cir. 1982); *United States v. Stuckey*, 441 F.2d 1104, 1105-06 (3d Cir. 1971).

However, defendant contends that several recent decisions addressing "punishment" for double jeopardy purposes have overturned this rule. To support his contention that prison disciplinary sanctions constitute punishment for double jeopardy purposes, defendant cites *Halper*, in which the United States Supreme Court held that a civil

monetary penalty sufficiently disproportionate to the harm caused to the government constituted punishment for double jeopardy purposes. *Halper*, 490 U.S. at 449-50, 104 L. Ed. 2d at 502-03, 109 S. Ct. at 1902-03. Specifically, *Halper* held that a civil penalty is punishment if it "cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." (Emphasis added.) *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902; see also *Austin v. United States*, 509 U.S. 602, 621, 125 L. Ed. 2d 488, 505, 113 S. Ct. 2801, 2812 (1993). Defendant apparently contends that because his disciplinary sanctions also serve retributive or deterrent purposes, they constitute punishment. We disagree.

*Halper* is distinguishable because it involved a civil sanction rather than an administrative sanction arising from a prison disciplinary proceeding. Furthermore, *Halper* held that applying the double jeopardy bar to a typical civil sanction does not "prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Halper*, 490 U.S. at 450, 104 L. Ed. 2d at 503, 109 S. Ct. at 1903. In contrast, as a practical matter, applying the prohibition against double jeopardy to prison disciplinary proceedings would effectively compel the government to choose between remedial goals—instituting a disciplinary proceeding—and punitive goals—awaiting a criminal prosecution. *United States v. Brown*, 59 F.3d 102, 104 (9th Cir. 1995); see *Newby*, 11 F.3d at 1145. Requiring the government to make this choice cannot be what the double jeopardy clause intended.

The government possesses the important remedial interest of maintaining order and encouraging compliance with prison rules "where good order and discipline are paramount because of the concentration of convicted criminals." *Newby*, 11 F.3d at 1145. To facilitate those remedial goals, prison administrators must have the ability to discipline a prisoner who violates institutional regulations. *Garrity*, 41 F.3d at 1153. Combining a prison disciplinary proceeding with a criminal prosecution is not feasible because preparation for the latter typically takes much longer than for the former. If the proceedings were combined, the resulting situation would leave the prisoner who violated prison rules without a prompt resolution of the disciplinary charges, thereby hindering prison administration. *Garrity*, 41 F.3d at 1153. In addition, the two proceedings serve different goals: the prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order; the criminal prosecu-

tion is designed to punish the defendant for a violation of the State's criminal laws. *Garrity*, 41 F.3d at 1153.

■ In *Halper*, the Supreme Court stated that the "purposes actually served by the sanction in question" are the key to determining whether a particular civil sanction constitutes "punishment." *Halper*, 490 U.S. at 447 n.7, 104 L. Ed. 2d at 501 n.7, 109 S. Ct. at 1901 n.7. Although punitive and remedial interests are tightly intertwined in the prison setting, disciplinary sanctions such as the withholding of good-time credit and disciplinary segregation are readily explained solely in remedial terms. *Brown*, 59 F.3d at 105. Both serve the government's remedial goals of maintaining institutional order and encouraging compliance with prison rules. In considering what is necessary and proper to preserve institutional order and discipline and to encourage good conduct, we defer to the judgment of prison authorities. The Supreme Court has instructed that the adoption and execution of policies and practices necessary to preserve internal order and discipline, and to maintain institutional security in the prison, are " 'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response[,] *** courts should ordinarily defer to their expert judgment in such matters.' " *Bell v. Wolfish*, 441 U.S. 520, 548, 60 L. Ed. 2d 447, 474, 99 S. Ct. 1861, 1878-79 (1979), quoting *Pell v. Procunier*, 417 U.S. 817, 827, 41 L. Ed. 2d 495, 504, 94 S. Ct. 2800, 2806 (1974).

We recognize that disciplinary sanctions also have a deterrent effect—good-time credits, for example, are granted to reward good behavior and are conditioned upon continuing good behavior. See 730 ILCS 5/3—6—3 (West 1994). Nevertheless, such sanctions can still be explained as serving *solely* the government's remedial purpose of maintaining institutional order —they are designed to punish only insofar as they enable the government to fulfill its remedial goals. See *Brown*, 59 F.3d at 105; *United States v. Hernandez-Fundora*, 58 F.3d 802, 806 (2d Cir. 1995). Thus, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that it constitutes punishment for double jeopardy purposes. *Hernandez-Fundora*, 58 F.3d at 806. We agree with the following observations of the court in *Newby*:

> "The disciplinary sanctions imposed in this case are not so grossly disproportionate to the remedial goal of maintaining order and discipline in the prison so as to constitute a punishment within the meaning of the Double Jeopardy Clause as interpreted in *Halper*." *Newby*, 11 F.3d at 1146.

Thus, we reject defendant's contention that prison disciplinary sanctions constitute punishment for double jeopardy purposes. To the extent that defendant's argument depends on the Supreme Court's definition of punishment in *Halper* and *Austin*, we note in passing that this foundation of the argument collapsed following the Supreme Court's recent decision in *United States v. Ursery*, 518 U.S. 267, 135 L. Ed. 2d 549, 116 S. Ct. 2135 (1996).

2. *Prison Disciplinary Sanctions Are Part of Original Sentence*

■ Even if we were to assume that the sanctions of reducing defendant's good-time credit and assigning disciplinary segregation were punitive, these sanctions constitute part of defendant's punishment for his original conviction. Thus, they do not bar defendant's criminal prosecution because any punishment resulting from the criminal prosecution will not result in a *second* punishment for the same conduct.

We first note that reducing a defendant's good-time credit is analogous to revoking parole, because it changes the *conditions* of a defendant's incarceration. Parole revocation does not violate the double jeopardy clause (*United States v. DiFrancesco*, 449 U.S. 117, 137, 66 L. Ed. 2d 328, 346, 101 S. Ct. 426, 437 (1980); *People v. Vahle*, 60 Ill. App. 3d 391, 395, 376 N.E.2d 766, 769 (1978)) because parole and probation are part of the original sentence (*Brown*, 59 F.3d at 104-05). Their continuance is conditioned on compliance with stated conditions, and if the defendant does not comply with those conditions, parole and probation may be revoked. See 730 ILCS 5/3—3—7, 3—3—9, 5—6—3, 5—6—4 (West 1994). Revocation of parole or probation is regarded as reinstatement of the sentence or delayed sentencing for the underlying crime, not as punishment for the conduct leading to the revocation. *Vahle*, 60 Ill. App. 3d at 395, 376 N.E.2d at 769; *Brown*, 59 F.3d at 104. Revocation does not *extend* the original sentence, but simply alters the conditions under which the defendant serves it. Thus, the fact that the events which lead to revocation may also constitute a second crime does not mean the revocation itself is punishment for the second crime. See *Vahle*, 60 Ill. App. 3d at 395-96, 376 N.E.2d at 769.

Similarly, compliance with conditions for awarding good-time credit is one of the terms of the original sentence. See 720 ILCS 5/3—6—3 (West 1994) (providing that a prisoner's sentence may be reduced by credit for good conduct). Withholding such credits—even though it may have a punitive effect—does not alter the original sentence; it only means the prisoner must serve a larger part of that sentence in prison. *Brown*, 59 F.3d at 105.

With regard to disciplinary segregation, changes in conditions of incarceration do not constitute a second punishment for the same offense. *Ralston v. Robinson*, 454 U.S. 201, 220 n.14, 70 L. Ed. 2d 345, 361 n.14, 102 S. Ct. 233, 245 n.14 (1981). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." See *Meachum v. Fano*, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 459, 96 S. Ct. 2532, 2538 (1976) (holding that a transfer between prisons generally does not implicate the due process clause). Thus, changing the place or conditions of defendant's confinement based upon an administrative determination that his disruptive conduct required a more structured environment—even if "punitive"—did not alter his original sentence. Accordingly, such a change does not bar criminal prosecution for that same disruptive conduct. *Brown*, 59 F.3d at 105.

## B. Motion To Dismiss

Last, defendant argues that the trial court erred by denying his motion to dismiss counts III and IV of the indictment, asserting that the court should have denied the State's motion to amend the counts to substitute defendant's name for Curt Davis as the person charged. Defendant contends that the misnomer was a substantial defect that resulted in substantial injustice to him pursuant to section 114—1(a)(10) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—1(a)(10) (West 1994)). The State responds that the court's denial of defendant's motion to dismiss those counts constitutes neither a final judgment nor an appealable interlocutory order; thus, this court lacks jurisdiction to entertain the matter. We agree with the State.

■ Subject to certain exceptions, appellate courts are without jurisdiction to review judgments, orders, or decrees which are not final. See *People v. Lamkey*, 240 Ill. App. 3d 435, 440, 608 N.E.2d 406, 410 (1992). A trial court's ruling denying a defendant's motion to dismiss criminal charges is not a final order or judgment, nor is it an interlocutory order appealable as a statutory exception. *People v. Farmer*, 165 Ill. 2d 194, 199, 650 N.E.2d 1006, 1009 (1995); 145 Ill. 2d R. 604. Therefore, however dubious defendant's argument may be, we cannot address it because it is not properly before us in this appeal.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.